460 So.2d 1075 (1984)
STATE of Louisiana, Appellee,
v.
Eddie Lee COOK, Appellant.
No. 16320-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
*1077 D. Milton Moore, III, Brown, Wicker, & Amman, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Johnny Parkerson, Dist. Atty., Earl Cox, Asst. Dist. Atty., Monroe, for appellee.
Before SEXTON and NORRIS, JJ., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
The defendant, Eddie Lee Cook, appeals his conviction of one count of Distribution of Marijuana, contrary to LSA-R.S. 40:966 A; and two counts of Possession of Marijuana, contrary to the provisions of LSA-R.S. 40:966 D. The trial court sentenced the defendant on the Distribution of Marijuana conviction to six years at hard labor to run consecutively with the defendant's prior conviction for which he was on probation. On the two counts of Possession of Marijuana the trial court sentenced the defendant to six months in jail on each count to run consecutively with each other but to run concurrently with the sentence imposed on the first count. In addition to the appeal of his conviction, the defendant appeals the forfeiture of his vehicle under LSA-R.S. 32:1550.
FACTS:
The record reflects that the defendant was the target of an investigation launched by the Metro Narcotics Unit of the Ouachita Parish Sheriff's Office. Pursuant to that investigation, Sargeant Royce Toney arranged to have a confidential informant *1078 introduce an undercover officer, Deputy Richard Medaries, to the defendant.
After meeting the defendant on several different occasions, the undercover officer contacted the defendant at his home at 1982 Joe G. Street in Monroe, Louisiana on January 15, 1982. At that time the undercover officer spoke with the defendant about the possibility of selling him guns and about the possibility of purchasing marijuana from the defendant. Medaries stated that the defendant indicated to him that he did not know Medaries well enough to sell him marijuana. However, after they spoke for a while concerning the guns and the marijuana, the defendant indicated that if Medaries left and came back in half an hour he might have made some arrangements enabling Medaries to obtain some marijuana.
Medaries testified that he then went to the Ramada Inn in Monroe and met with Sargeant Royce Toney and informed him of what had happened. Medaries then returned to the defendant's residence half an hour later.
Defendant informed Medaries that he was able to find someone and that Medaries could get some marijuana by driving one block down the street from defendant's house where a black male in a grey shirt and grey pants would be standing on the corner. The defendant informed Medaries that when he stopped at the corner that the black male would have the marijuana for him.
Medaries then drove his vehicle to the stop sign and a black male wearing a grey jogging suit stepped off the curb and walked to the window of his car. Medaries observed the man pull out a plastic bag which he believed to be marijuana at which time Medaries handed the man $25.00. After the transaction, the man stated, "nice doing business with you," and then the man walked off. Medaries then returned to the Ramada Inn where he turned the suspected marijuana that he had purchased over to Sergeant Toney.
On January 20, 1982, Medaries again contacted the defendant at his residence in Monroe. Medaries told the defendant that he would like to trade four cases of liquor for two bags of marijuana. The defendant informed Medaries that he had some friends that were interested in the guns that Medaries had to sell and that he might possibly be able to get marijuana for the guns, but that he was not sure about the liquor. Medaries and the defendant then went to the defendant's vehicle which was parked in the parking lot next to the defendant's apartment and they sat in the front seat. At that point the defendant produced a small coin envelope and a rolling paper and rolled marijuana cigarettes which he lit up and smoked with Medaries. Medaries testified at the forfeiture hearing, held before the trial, that he had offered, and the defendant had accepted a bottle of amaretto for the marijuana cigarette. However, at trial Medaries was not certain that he had offered the amaretto for the cigarette. Regardless, Medaries testified that he and the defendant sat in the car and smoked until a yellow Opel arrived with three black males. At that time, he and the defendant got out of the vehicle and spoke with one of the black males.
After the conclusion of his conversation with the occupants of the yellow Opel, the defendant told Medaries that they wanted to inspect the liquor and suggested that they drive down the street to an isolated parking area. Medaries drove to the parking lot, the defendant and the other black male walked through the parking lot to the car, Medaries opened the trunk of his car and the black male examined the liquor. Medaries told the man that he wanted two bags of marijuana for the liquor.
After the man inspected the liquor, Medaries drove back to the defendant's residence while the defendant and the other man walked back. On their return the man walked over to Medaries car and stood next to it on the passenger side. Medaries testified that as he was reentering the driver's side of his car, two bags of marijuana were placed on the seat through the front passenger door. Medaries did not see who had placed the marijuana on the front seat of *1079 his car. At that point Medaries, the defendant, and the other man took the cases of liquor out of Medaries' trunk and placed them in the defendant's car. As they were placing the liquor into the defendant's car, Medaries was granted permission to keep the unused portion of the marijuana cigarette that was in the ashtray of the defendant's car. Medaries then left the scene and proceeded to where Sergeant Toney was located and turned the evidence over to him.
On March 9, 1982, Medaries again went to the defendant's residence with two cases of liquor in an attempt to trade them for marijuana. The defendant informed Medaries that he did not have marijuana there; however, he would take the liquor and keep it and that Medaries could come back at a later date and see if he had gotten any marijuana. Prior to leaving the defendant's residence, the defendant gave Medaries one marijuana cigarette. After leaving the defendant's residence, Medaries turned the evidence over to Sergeant Don McClanahahn of the Monroe Police Department who was assigned to the Metro Narcotics Unit.
Ann Armstrong, employee of the North Louisiana Crime Lab located in West Monroe, Louisiana, testified that the vegetable material received by Medaries from the defendant was found to be marijuana.
On April 19, 1982, defendant was charged by bill of information with three counts of distribution of marijuana LSA-R.S. 40:966. The jury found the defendant guilty as charged on the first count which occurred on January 15, 1982. However, the jury found the defendant guilty of the lesser included offense of possession of marijuana on the two remaining counts which occurred on January 20, 1982 and March 9, 1982. It is on these convictions from which the defendant appeals.
The defendant originally filed nine assignments of error. Defendant has not argued or briefed assignments 2, 4, and 7. Therefore, assignments 2, 4, and 7 are deemed abandoned. State v. Domingue, 298 So.2d 723 (La.1974). Assignments of error briefed by the defendant are as follows:
1. The Trial Court erred in overruling defendant's Motion to Release Siezed Property and in ordering the forfeiture of defendant's vehicle at the hearing held on October 14, 1982.
3. The Trial Court erred in overruling and denying the defendant's Motion for New Trial on his conviction of count one (1) of the three counts Bill of Information. Specifically, defendant shows that the verdict on count one (1) of the Bill of Information was contrary to the law and evidence in that evidence adduced at trial was wholly insufficient to find defendant guilty beyond a reasonable doubt of the offense of distribution of marijuana as the jury found in count one (1) of the three count Bill of Information.
5. The Trial Court erred in imposing a sentence which was cruel and excessive based on the minimal participation of the defendant in the felony offense for which he was found guilty, under count one (1) of the three count bill of information.
6. The Trial Court erred in imposing a sentence upon the defendant for count one (1), distribution of marijuana that was excessive on its face (six years) and was grossly excessive in light of the admitted participation by agents of the State of Louisiana and the scheme which culminated the defendant's arrest for distribution of marijuana charges.
8. The Trial Court erred in imposing a sentence upon the defendant for his conviction of count one (1) of the bill of information which was grossly disproportionate to other sentences imposed by the trial judge for other and more serious drug offenses. Specifically, defendant shows that his sentence was grossly excessive and disproportionate under the facts of his case, and shown at trial hereof, in comparison with the fact, disposition *1080 and ultimate sentence by his Honor, Judge John R. Harrison, under the case of State of Louisiana v. Richard O'Keefe, 401, 647 on the docket of the Fourth Judicial District Court, in and for Ouachita Parish, Louisiana, which case involved a registered pharmacist pleading guilty to two felony drug charges after having six additional felony charges dismissed, and the trial judge's ultimate disposition of said defendant, O'Keefe, to a suspended prison sentence and a minimal fine. Said O'Keefe case involved the distribution of schedule II, III, and IV controlled dangerous substances, whereas defendant's conviction under counts one (1) of Bill of Information involved the defendant making a telephone call at the request and insistence of an agent of the state of Louisiana unto a third party, who ultimately produced, distributed and sold a one ounce bag of marijuana unto the said agent for the state of Louisiana.
9. The Trial Court erred in refusing to grant defendant's post verdict motion for acquittal and/or defendant's Motion for a New Trial, on the basis that said defendant had made out and proven a valid defense of entrapment under the laws of the State of Louisiana.
ASSIGNMENT OF ERROR NO. 1
By this assignment, the defendant appeals, as part of his criminal conviction, a judgment of forfeiture in which the defendant's 1969 Cadillac was seized. While the forfeiture is based upon events pertaining to the defendant's conviction, the forfeiture is not a proceeding relevant to or dependent upon the defendant's conviction. Therefore, it appears that the defendant has improperly appealed the forfeiture as part of his criminal conviction.
A forfeiture is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law. The forfeiture is clearly a penalty for the criminal offense and can result in an even greater punishment than the prosecution. State v. Manuel, 426 So.2d 140 (La.1983).
The forfeiture statute, LSA-R.S. 32:1550, provides no mechanism for judicial review. However, as the Louisiana Supreme Court noted in State v. Manuel, supra, no person may be subjected to forfeiture of property without the right of judicial review based on a complete record of all evidence upon which the judgment is based. La. Const. Art. I, Sect. 19 (1974). Where no procedure is specifically prescribed by statute, the court may proceed in a manner consistent with the spirit of the provisions of the constitution and the law. La.C.Cr.P. Art. 3; State v. Manuel, supra.
Under LSA-C.Cr.P. Art. 912.1 B, a defendant may appeal to the court of appeal from a judgment in a criminal case triable by jury, excepting cases in which a sentence of death actually has been imposed. This court has previously determined that in a forfeiture proceeding a defendant has no right to a jury trial. State v. Bradley, 446 So.2d 803 (La.App. 2d Cir.1984). Therefore, since a forfeiture proceeding is not triable by jury, defendant has no right of appeal under LSA-C.Cr.P. Art. 912.1 B.
However, under LSA-C.Cr.P. Art. 912.1 C defendant has the right of judicial review by application to the court of appeal for a writ of review. In the present case, the record contains all evidence upon which the judgment of forfeiture was based. Therefore, we will consider this assignment of error as an application for a writ of review.
Pursuant to LSA-R.S. 32:1550 the state filed a petition for seizure and forfeiture on March 15, 1982 alleging that on January 20, 1982 defendant's vehicle was used to facilitate the transport of and to transport, sell, receive, possess, manufacture, compound, dispense, distribute, and conceal contraband to wit: marijuana. Subsequent to the petition for forfeiture, the state charged the defendant in count two of the bill of information with willfully, unlawfully, knowingly, and intentionally distributing marijuana on or about January 20, *1081 1982, contrary to provisions of LSA-R.S. 40:966.
The defendant then filed a motion to release the seized property. In response to defendant's motion, the state instituted a forfeiture hearing prior to defendant's trial. At the conclusion of the hearing, the trial court ordered the defendant's vehicle forfeited.
In State v. Manuel, supra, the Louisiana Supreme Court determined that the procedures for forfeiture require the district attorney to prove beyond a reasonable doubt in a hearing instituted by him that: (1) valid grounds exist for forfeiture of the property under the statute which do not conflict with the constitution; (2) the seizure was in conformity with the constitution and the law or was made upon reasonable grounds to believe that it so conformed; (3) the owner of the conveyance was knowingly and intentionally a consenting party or privy to a violation of the controlled dangerous substance statute, and (4) the value of the contraband was in excess of $500.00 or the contraband was intended for commercial sales.
Additionally, the Supreme Court in Manuel has construed the forfeiture statute to provide that any movable property, including an automobile, which is used as an immediate instrument of a crime under the controlled dangerous substance statute is contraband subject to seizure and forfeiture, subject to five exceptions. Relevant to the present case, an article of property may not be forfeited unless it was an immediate instrument of a crime involving contraband in excess of five hundred dollars in value or contraband intended for commercial sale. State v. Manuel, supra.
In the present case, the defendant was charged with distribution of marijuana; however, the jury found the defendant guilty of the lesser included offense of possession of marijuana.
Deputy Richard Medaries, the undercover officer involved in the investigation, testified at the forfeiture hearing that on January 20, 1982, he went to the defendant's residence for the purpose of exchanging four cases of liquor for marijuana. Defendant indicated to Medaries that he did not have any marijuana to give him but knew some people who might exchange marijuana for the liquor. Medaries testified that he then showed the defendant the liquor in the trunk and that the defendant offered to exchange a marijuana cigarette for a bottle of amaretto. Medaries stated that he gave the bottle of amaretto to the defendant and that the defendant went into his residence and returned with a brown coin envelope. Medaries stated that he and the defendant then sat in the defendant's vehicle parked in the parking lot in front of defendant's residence, rolled a marijuana cigarette, and smoked it passing it back and forth.
After smoking the marijuana, three black males drove up in a yellow Opel. After speaking with one of the black males concerning trading the liquor for two bags of marijuana, Medaries returned to his car to find two bags of marijuana lying on the front seat. Medaries could not identify who had placed the marijuana in his car. At the preliminary examination, Medaries testified that the liquor was then placed in the vehicle driven by the other three black males. However, at trial Medaries testified that he was incorrect and that they had placed the liquor into the trunk of the defendant's vehicle.
At the trial Medaries testified that he was not certain, but he believed that he had asked the defendant for a joint in return for the bottle of amaretto.
We find that the state has failed to prove beyond a reasonable doubt grounds for the forfeiture. We find that the state has failed to show that the vehicle was used as an immediate instrument of the crime under LSA-R.S. 32:1550. The evidence in the present case does not indicate that marijuana was being stored, concealed, or distributed in the vehicle. In fact, the circumstances seem to indicate that the defendant went into his residence to obtain the marijuana cigarette. The only connection between the vehicle and *1082 the crime in the present case is that the defendant and the undercover officer smoked the marijuana cigarette while merely sitting in the defendant's vehicle. We find that this fact standing alone is insufficient to hold that the smoking of a marijuana cigarette in a vehicle causes the vehicle to become an immediate instrument of the crime of possession of marijuana.
Therefore, the defendant's writ is granted and made peremptory. The judgment of forfeiture is hereby reversed and the defendant's vehicle is ordered returned to his possession forthwith.
ASSIGNMENTS OF ERROR NOS. 3 AND 9
By these assignments the defendant asserts that the trial court erred in overruling and denying defendant's motion for a new trial and in refusing defendant's motion for post verdict judgment of acquittal in his conviction of count one, distribution of marijuana. Defendant contends that there was insufficient evidence to find him guilty of distribution and even with a finding that there was sufficient evidence of distribution, the defendant contends that he should have been acquitted on the basis of his defense of entrapment.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard which was adopted by the legislature in enacting LSA-C.Cr.P. Art. 821, which pertains to post verdict motions for acquittal based on insufficiency of evidence, is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
The record in the present case indicates that on January 15, 1982 an undercover officer for the Metro Narcotics Unit, Deputy Medaries, was told by the defendant to drive one block from his residence to a street corner where a black male would be waiting. Defendant told Medaries to hand the man the money and the man would then hand him a bag of marijuana. Medaries testified that he followed the defendant's instructions, drove to the corner where the man was standing, and in fact completed the transaction.
Under LSA-R.S. 14:24, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. In the present case, we find that a rational trier of fact could have found that the defendant did aid and abet in the commission of the crime of distribution of marijuana. The instructions given by the defendant to the undercover officer would constitute aiding and abetting in the commission of the offense. Therefore, there was sufficient evidence to prove defendant's guilt beyond a reasonable doubt.
Despite the sufficient evidence to support the conviction, defendant contends that he had proven the affirmative defense of entrapment.
An entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official for the purpose of obtaining evidence of the commission of an offense solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so. State v. Batiste, 363 So.2d 639 (La.1978). When entrapment is at issue, the focal point of the inquiry is on the predisposition of the defendant to commit the crime at issue as well as on the conduct of the police. State v. Batiste, supra. For entrapment to exist, a defendant must be induced in some way to engage in criminal conduct which he otherwise would not be disposed to engage in. An entrapment defense will not lie if the officers or agents have merely furnished a *1083 defendant who is predisposed to commit the crime the opportunities to do so. State v. Moody, 393 So.2d 1212 (La.1981).
In order to determine the appropriate standard of appellate review it is necessary to ascertain whether the state or the defendant carries the burden of proof when the affirmative defense of entrapment is raised.
The plea of not guilty throws upon the state the burden of proving beyond a reasonable doubt each element of the crime necessary to constitute the defendant's guilt. In In re Winship 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); LSA-R.S. 15:271. However, the elements of the affirmative defense of entrapment do not constitute or contradict any of the elements of the crime of distribution of marijuana.
In federal court, in the Fifth Circuit, in order to raise the defense of entrapment, the defendant has the initial obligation of coming forward with evidence of government involvement and inducement. United States v. Wolffs, 594 F.2d 77 (5th Cir., 1979). However, the ultimate burden of proof, "the risk of nonpersuasion", is always on the government. United States v. Tate, 554 F.2d 1341 (5th Cir., 1977). Despite the current status of federal law, the Proposed Federal Criminal Code § 702 defines entrapment as an affirmative defense. As an affirmative defense, entrapment, under § 103 of the Proposed Federal Criminal Code must be established by the defendant by a preponderance of the evidence. Final Report of the National Commission on Reform of Federal Criminal Laws, Proposed Federal Criminal Codes § 702 (1971).
In Louisiana, LSA-C.Cr.P. Art. 652 codified the longstanding requirement that a defendant has the burden of establishing the affirmative defense of insanity by a preponderance of the evidence. Prior to the enactment of Art. 652, the Louisiana Supreme Court had long ago held that the defendant had the burden of proof by preponderance of the evidence on the issue of insanity. State v. Scott, 49 La.Ann. 253, 21 So. 271 (1897); State v. Stewart, 238 La. 1036, 117 So.2d 583 (1960).
In State v. Freeman, 427 So.2d 1161 (La.1983) the state and the defense argued that the standard of appellate review on appeal is whether a rational fact finder, viewing the evidence most favorable to the prosecution, could have concluded that the defendant failed to prove by preponderance of the evidence, that she acted in self defense. This assertion was based upon language used in State v. Landry, 381 So.2d 462 (La.1980) which held that in a nonhomicide case the affirmative defense of self defense need be established only by a preponderance of the evidence, not beyond a reasonable doubt as is incumbent upon the state to prove defendant's guilt. However, the majority of the court found that they need not resolve the issue of who bears the burden in the case because irrespective of who bears the burden, the record showed that the defendant did not act in self-defense.
In concurring opinions in State v. Freeman, supra, Justices Lemmon and Marcus stated that the prosecution's burden was to prove beyond a reasonable doubt that the defendant committed each element of the offense charged. In order to overcome the prosecution's proof the defendant had the burden to establish by a preponderance of the evidence that she acted on the basis of a reasonable belief that her use of force or violence was both reasonable and apparently necessary to prevent a forcible offense against her person. Justice Lemmon found that this approach does not have the affect of shifting the burden of proof to the defendant to disprove any elements of the offense. Rather, this approach construed the provisions of LSA-R.S. 14:19 as an "affirmative defense to be established by the defendant."
In view of the Louisiana Supreme Court holdings concerning the affirmative defense of insanity and its discussion of the affirmative defense of self-defense, by analogy we find that the defendant has the burden of production of evidence in support of his defense of entrapment and, having *1084 done so, he has the burden of persuading the trier of fact of the existence of facts constituting the defense by a preponderance of the evidence. See also Lafave and Scott, Handbook on Criminal Law, § 48, Note 28 (1972 edition); Model Penal Code, § 2.13(2).
In State v. Roy, 395 So.2d 664 (La.1981) the Louisiana Supreme Court adopted the Jackson v. Virginia standard of review when a defendant pleads the affirmative defense of insanity and claims that the record evidence shows that he had proven his affirmative defense of insanity by a preponderance of the evidence. Therefore, by analogy we find that a review of the defendant's contention that he had proven the defense of entrapment must be reviewed under the Jackson v. Virginia standard.
The relevant inquiry by the reviewing court is whether the defendant adduced evidence of his entrapment in the offense such that any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was entrapped.
Applying this standard to the present case, we find the trier of fact could have found that the defense of entrapment was not established. The jury could have found that Officer Medaries merely furnished the opportunity for the defendant to become involved in the offense charged. The record reflects that on numerous occasions the defendant conveyed his knowledge of where drugs could be obtained to Officer Medaries. Additionally, the defendant had a prior distribution offense conviction. While the evidence does reflect that Officer Medaries did solicit marijuana purchases from the defendant on numerous occasions, we find that a rational fact finder could have found that the defendant had the necessary predisposition to commit the crime with which he was charged, and that the undercover officer merely furnished the opportunity for the defendant to commit the crime. Therefore, these assignments of error are without merit.
ASSIGNMENTS OF ERROR NOS. 5, 6, AND 8
By these assignments, the defendant contends that his sentence of six years at hard labor for his conviction of distribution of marijuana on count one was clearly excessive and disproportionate to other drug cases being handled by the trial court.
It is well settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits, and such a sentence should not be set aside as excessive in absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Browning, 454 So.2d 1241 (La. App. 2d Cir.1984).
The sentencing guidelines of LSA-C. Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he has adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983).
At the defendant's sentencing hearing, the trial court found that the defendant was a second felony offender and therefore not eligible for probation. The court found that because the defendant was on probation for a previous distribution conviction when the offense for which he was being sentenced took place, there was an undue risk that during a period of suspended sentence or probation, the defendant would commit another crime. The court further found that the defendant was in need of correctional treatment or a custodial environment that could best be provided by the defendant's commitment to an institution. The court found that a lesser sentence would deprecate the seriousness of the crime.
In mitigation of the sentence, the court found that the state did not establish that *1085 the defendant was a daily drug user or that he was extensively involved in the drug subculture in the Ouachita Parish area. Additionally, the court considered the fact that the undercover officer solicited the purchases from the defendant on numerous occasions.
The defendant asserts that this court in State v. Turner, 440 So.2d 834 (La.App. 2d Cir.1983) found that the determinative inquiry is whether the sentencing judge committed a manifest abuse of his wide discretion in imposing the sentence on the defendant by according too much weight to the aggravating factors and not enough weight to the mitigating factors.
The maximum possible penalty for distribution of marijuana under LSA-R.S. 40:966 B(2) is imprisonment of not more than ten years at hard labor and a fine of not more than $15,000.00. We find no abuse of the trial court's discretion in imposing the six year sentence in this case. The record fully reflects that the trial court considered all relevant factors under Art. 894.1 in sentencing. We do not find that the trial court accorded too much weight to the aggravating factors.
Next, defendant asserts that the sentences were constitutionally excessive in violation of Art. 1 Sec. 20 of the Louisiana Constitution. A sentence is constitutionally excessive if a sentence is grossly out of proportion to the severity of the offense or nothing more than a needless or purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Browning, supra. Additionally, it is recognized that a sentence may be both within the statutory limits and violative of the defendant's constitutional right against excessive punishment. State v. Machon, 410 So.2d 1065 (La.1982).
Review of the record in the present case indicates that the defendant's sentence is not grossly out of proportion to the severity of the offense nor does there appear to be a needless and purposeless imposition of pain and suffering. Six years at hard labor for an offender who participated in the commercial sale of a controlled dangerous substance is not excessive.
Next, the defendant contends that his sentence was disproportionate to the sentence imposed by the trial court in another similar case. Specifically, defendant refers to a case in which a registered pharmacist plead guilty to two felony drug charges in which the defendant was given a suspended sentence and placed on supervised probation.
The trial court noted in its per curiam that the defendant misrepresented the other case. The trial court noted that said person plead guilty to giving two amphetamine tablets to an undercover police officer on two occasions.
We agree with the trial court in its per curiam and do not find that the sentence in this case is disproportionate to the case cited by the defendant.
These assignments of error are without merit.
DECREE
The defendant's convictions and sentences are affirmed. A writ of review is granted and made peremptory. The forfeiture judgment is reversed.
Conviction AFFIRMED.
Forfeiture REVERSED.