FRED W. JONES, Jr., Judge.
After a jury trial the defendant Troquille was found guilty, as charged, of distribution of marijuana [La.R.S. 40:966(A)(1) ]. He was sentenced to serve six years in prison. The defendant appealed, reserving several assignments of error. Finding merit in none of them, we affirm.
On May 17, 1983 Troquille sold a bag of marijuana to an undercover officer, employed as a deputy by the Webster Parish Sheriff’s office, for $50. Another deputy sheriff testified that she observed the sale. Troquille’s defense was entrapment.
ENTRAPMENT
In this assignment of error, the defendant contends that the trial court erred when it prevented him from showing his lack of predisposition to commit the offense. In particular, the defendant sought to ask several of his witnesses whether *688 they had ever known the defendant to use or sell marijuana.
The record discloses the following: Joe Troquille, the defendant’s cousin, testified on behalf of the defendant. When defense counsel inquired if he had ever known the defendant to use or deal marijuana, he responded negatively. The court sustained the State’s objection on the basis of relevancy, even though the witness had already answered the question. Another cousin of the defendant, Willie Carl Troq-uille, testified on behalf of the defendant and the same ruling was made applicable to him. Following argument, the court made its ruling general as to all other witnesses who would have been called to testify on behalf of the defendant and State. The basis for the court’s ruling was twofold. The court found that the evidence sought to be elicited was character evidence which had not been placed at issue, and that the questions were pertaining to specific acts instead of general reputation. The court’s ruling was also made applicable to Raydell Branton and Dena Kelly. The defendant successfully testified that he had never sold marijuana to anyone before. The court then sustained the State’s objection based on relevancy when the defendant was asked by counsel if he had ever thought of selling marijuana before.
In State v. Cook, 460 So.2d 1075 (La.App. 2d Cir.1984), a panel of this court described the entrapment defense as follows:
An entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official for the purpose of obtaining evidence of the commission of an offense solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so. State v. Batiste, 363 So.2d 639 (La.1978). When entrapment is at issue, the focal point of the inquiry is on the predisposition of the defendant to commit the crime at issue as well as on the conduct of the police. State v. Batiste, supra. For entrapment to exist, a defendant must be induced in some way to engage in criminal conduct which he otherwise would not be disposed to engage in. An entrapment defense will not lie if the officers or agents have merely furnished a defendant who is predisposed to commit the crime the opportunities to do so. State v. Moody, 393 So.2d 1212 (La.1981).
Further, in Cook, supra, this court held that the defendant has the affirmative burden of establishing the entrapment defense. Cook, at pages 1083, 1084.
The prosecution objected to the aforementioned questions on the basis of relevancy. La.R.S. 15:441 provides:
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.
La.R.S. 15:479 and 15:480 allow for the accused to introduce evidence of his character. La.R.S. 15:479 states:
Character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons think of him.
La.R.S. 15:480 provides:
Evidence of the good character of accused is always admissible in his behalf, and must be considered in connection with and as part of the whole testimony and due weight be given it, but it can not destroy conclusive evidence of guilt; and such evidence must be restricted to showing character as to such moral qualities as have pertinence to the crime with which he is charged.
The State objected to the admissibility of the questions asked and the responses thereto on the basis of relevance. The trial court sustained the objection on the basis that the defendant’s character had not yet been placed at issue and, furthermore, that the questions sought to elicit improper character evidence.
*689 The assistant district attorney stated an incorrect basis for his objections to the questioning. As the questions (though self-serving and selective) were aimed toward the defendant’s propensity or lack thereof to commit the offense, they were relevant to the defense of entrapment. However, the questioning was inadmissible for the following reasons.
In State v. Frentz, 354 So.2d 1007 (La.1978), the Louisiana Supreme Court summarized the admissibility of “character” testimony as follows:
Testimony as to “character” (reputation) may be admissible for two distinct purposes, with differing rules and reasons:
(1) The credibility of a witness may be attacked “by showing that his general reputation for truth or for moral character is bad.” La.R.S. 15:490. In that event, “the inquiry must be limited to general reputation, and can not go into particular a. ⅛, vices or courses of conduct.” La.R.S. 15:491. If the accused takes the stand, he places his credibility at issue, and his credibility may then be attacked in the same manner, with the same limitations, as in the case of any other witness. La.R.S. 15:462, 486. The inquiry is, in this case, limited to general reputation for truth and character with regard to veracity; and the defendant may not advance affirmative proof of this character unless the state has, by cross-examination or otherwise, placed his reputation for credibility at issue.
See: State v. Muse, 319 So.2d 920 (La.1975), discussed at 37 La.L.Rev. 589-90 (1970); McCormick on Evidence, Section 44 (2d ed. 1972); cf., Pugh, Louisiana Evidence Law 22-23 (1974).
(2) The accused may also introduce evidence of his character to show he is not the type of person who would commit the particular crime charged; until he does so, his character (reputation) is not at issue; but, if he does so, the state may introduce rebutting reputation testimony only as to the aspects of reputation put at issue by the accused. La.R.S. 15:479, 480. The character evidence is limited to “the general reputation that a man has among his neighbors, not upon what particular persons think of him.” La.R.S. 15:479. The accused’s introduction of evidence for such purpose “must be restricted to showing character as to such moral qualities as have pertinence to the crime with which he is charged.” La. R.S. 15:480.
See: State v. Kelly, 237 La. 991, 112 So.2d 687 (1959); Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (leading case); Pugh, Louisiana Evidence Law 22-23 (1974); McCormick on Evidence, Section 191 (2d ed. 1972).
In State v. Bagley, 378 So.2d 1356 (La.1979), the court stated:
Evidence of a defendant’s good character is always admissible to show that it is unlikely he committed the crime with which he is charged. LSA-R.S. 15:480. However, the State is not permitted to show that the defendant is a bad person for the purpose of convincing the jury it is more likely than not that he is guilty. Thus, the State is allowed to introduce evidence of the defendant’s bad character only for the purpose of rebutting evidence of good character presented on the defendant’s behalf. LSA-R.S. 15:481. LSA-R.S. 15:479 provides that a man’s character, good or bad, is that reputation which he enjoys in the community, and hence no witness may testify as to his personal opinion of the defendant.
The case of State v. Bissett, 451 So.2d 181 (La.App. 1st Cir.1984) appears to be on point. The defendant was charged with one count of disturbing the peace, resisting an officer and simple battery. Following her conviction, she contended that the court erred in sustaining the State’s objection to the following question posed to a defense witness on direct examination:
In your past experience with Ms. Bis-sett have you ever noticed that she has any proclivity to be violent at any time?
*690 Citing La.R.S. 15:479, the court stated that defense counsel attempted to elicit a specific and personal opinion from the witness concerning the defendant’s proclivity toward violence. The court held that the question was not designed to elicit a response concerning general reputation and thus was properly excluded. The court explained that the witness then was permitted to testify in accordance with La.R.S. 15:480, when the witness testified that the defendant had an excellent reputation with her neighbors for her ability to get along with others.
Likewise, the questions posed by defendant’s counsel clearly were designed to place the defendant’s character at issue in an attempt to show “lack of predisposition”. The same type of testimony could have been elicited if defense counsel had inquired of each witness’ knowledge of the defendant’s reputation for temperance. Defense counsel’s questions were not restricted to showing Character “as to such moral qualities as have pertinence to the crime with which he is charged.” Accordingly, defense counsel’s questioning was properly precluded under La.R.S. 15:479, 480.
For the foregoing reasons, we find that this assignment is without merit.
CONFIDENTIAL INFORMANT
Defendant next argues that the trial court erred when it refused to order the state to disclose the identity of the “confidential informant” who was alleged to have been an eye-witness to events prior to the date of the offense. The defendant argues that he was entitled to be informed of the identity of the alleged confidential informant for the following reasons. Numerous defense witnesses testified that a woman who identified herself as “Debbie” began calling him on a regular basis at his residence in April 1983 and did so for a month to six weeks before defendant finally sold the marijuana to the deputy. On rebuttal, Deputy Haynes testified that she first came into contact with the defendant around the first week of May and that she was certain of that date because that was when she was using a certain confidential informant. Defendant argues that the confidential informant should have been produced to enable him to challenge the rebuttal testimony.
In State v. Davis, 411 So.2d 434 (La.1982), the Louisiana Supreme Court stated the following:
Roviaro and the cases which follow it have given us certain outlines in which to operate. At one end of the spectrum is the “mere tipster” case. It is well settled that the Roviaro principle does not require disclosure and production of such an informant. At the other end of the spectrum are other cases such as Rovia-ro, itself, in which the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to insure a fair trial.
* * * * * *
Additionally, the burden of proving why he needs to know the identity of the confidential informant is placed on the defendant. In other words, the defendant must convince the court that the informant may be able to give testimony which is necessary to a fair determination of the issue of guilt or innocence. Thus, the present case must be examined in the light of the outlines laid down in the Roviaro case and subsequently followed by this State Supreme Court in the cases of State v. Dotson, [260 La. 471, 256 So.2d 594 (1971)] State v. Santos, [309 So.2d 129 (La.1975)] and State v. Williams, [347 So.2d 184 (La.1977)] supra.
In Davis, an undercover agent made four separate drug purchases from the defendant, all of which were conducted in the presence of an unidentified confidential informer. The defendant testified that he had never seen the undercover agent until he saw him in court at trial. The Louisiana Supreme Court did not find reversible error in the trial court’s failure to require the prosecution to disclose the identity of the confidential informant because the infor *691 mant did not play a crucial role in the alleged criminal transaction.
In State v. Humphries, 463 So.2d 804 (La.App. 2d Cir.1985), the informant introduced an undercover agent to the defendant who, later in the evening, sold the agent one gram of cocaine outside of the presence of the informant. A second purchase was conducted in the absence of the informant five days later. This court found that the prosecution was not required to disclose the identity of the confidential informant because the informant was not in a position to witness either purchase.
Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), cited by defendant, is inapposite. The confidential informant played a prominent role in the offense, having physically received the drugs from the defendant out of the presence of surveillance officers.
The instant case appears to be one which the Louisiana Supreme Court has defined as a “mere tipster” case. The court has stated that the Roviaro principle does not require disclosure and production of such an informant. In the instant case it is apparent that the informant was not present at the time of the offense herein. The confidential informant was used only to gain the identity of someone known to illicitly distribute drugs. He was neither a witness to nor a participant in the drug transaction herein. As such, the prosecution should not have been required to disclose the identity of the informant.
The instant case is analogous to Humphries, supra, in that the informant was not present when the alleged purchase took place and therefore disclosure of the identity of the informer is not required.
This assignment lacks merit.
SURREBUTTAL TESTIMONY
In this assignment of error, the defendant alleges that the trial court erred in refusing to grant surrebuttal so that he could offer evidence rebutting the testimony of Deputy Debbie Haynes, who had testified on rebuttal for the prosecution.
The defense sought to show that Debbie Haynes called the Troquille residence on numerous occasions beginning in early April, 1983. Testifying in support of that contention were Raydell Branton, Dena Diane Kelly and Anita Troquille, the defendant’s wife.
On rebuttal, Deputy Haynes testified that she first came into contact with Troq-uille in the first week of May 1983, when introduced to him through a confidential informant. At that meeting Troquille allegedly told the deputy that he could get her some marijuana and gave the deputy his phone number. Haynes further testified that she called the defendant’s residence on four occasions and that in every instance she talked to a man, not a woman; that she never made the statement to the defendant that she “needed to get smokes for her old man”; and that she never made any phone calls to the defendant’s residence until after May 1, 1983. This was contrary to defense witnesses who stated that the phone calls began in early April.
The defendant asserts that the unrebut-ted testimony of Debbie Haynes was fatal to his defense because it countered his contentions that he was induced to deliver the marijuana to her. In brief, defendant states that the deputy’s testimony required rebuttal because it was bolstered by references to a confidential informant who set up the alleged meeting between the defendant and Deputy Haynes.
The record reveals that when the rebuttal testimony of Deputy Haynes concluded, defense counsel sought surrebuttal through Joe Troquille. The trial court denied the request. Defense counsel objected and requested permission to make an offer of proof of Joe Troquille’s testimony. The request was denied.
In State v. Scroggins, 465 So.2d 820, 823 (La.App. 2d Cir.1985) this court stated the following:
The prosecution has the right to rebut the evidence adduced by the defendant, but the defendant is without the right to *692 rebut the prosecution’s rebuttal. LSA-R.S. 15:282. However, the court in its discretion may permit the introduction of additional evidence prior to argument. LSA-C.Cr.P. Art. 765. State v. Birdsong, 452 So.2d 1236 (La.App. 2d Cir.1984). The recalling of a witness lies within the sound discretion of the trial judge. State v. Bias, 337 So.2d 426 (La.1976).
Although defense counsel sought to make an offer of proof of Joe Troquille’s testimony, counsel did not state for the benefit of the court exactly what Joe Troq-uille would testify to. If counsel had demonstrated a particularized need requiring rebuttal, perhaps the court would have granted it. Further, Joe Troquille had already testified that he had never known the defendant to use marijuana or to deal marijuana. Thus, through this witness’ testimony, counsel was able to show that the defendant had no predisposition to commit the offense. Also, the defendant made no showing how the testimony of Joe Troq-uille could rebut Haynes’ testimony concerning the alleged meeting between the defendant, Deputy Haynes and the confidential informant. The record also shows that the defendant had ample opportunity to cross-examine Deputy Haynes both during the state’s case in chief and on rebuttal. The defendant was not denied his opportunity to demonstrate before the jury his lack of predisposition to commit the offense through the denial of surrebuttal. The defense was afforded ample opportunity to show that the offense was instigated by law enforcement authorities and that he was improperly induced to commit the offense. When the defendant puts on evidence, the state has the right to counter the same. The regular order of trial was followed.
This assignment is without merit.
IDENTIFICATION OF VOICE
In this assignment, defendant contends that the trial court erred in refusing his request to have Deputy Debbie Haynes brought into the courtroom to speak in front of the defendant’s witnesses so that they could testify that her voice was the same voice that they heard on the telephone.
The record discloses the following sequence of events in connection with this assignment of error. Raydell Branton, a defense witness, testified that a woman who identified herself as “Debbie” called once a week for approximately one month beginning in early April. On redirect examination, Mr. Branton testified that he recognized the caller’s voice as being the same as that of Debbie Haynes, who had testified previously. Branton stated that he recognized her voice when he heard her in the hall outside the courtroom. At defense counsel’s request, the court ordered that Debbie Haynes be brought into the courtroom for identification by the witness. Defense counsel asked the court to order Deputy Haynes to repeat the words, “Debbie, a friend of Steve’s” in the presence of the jury so that Branton could make a voice identification as well. The court declined to go that far. Branton then testified that the deputy was the same person who made the phone calls to the Troquille residence by recognizing her voice. After cross-examination by the state, the defense once again requested that the court order Deputy Haynes to be brought into the courtroom and to utter the words, “Debbie, a friend of Steve’s, may I speak with Steve.” The request was denied by the court, stating that to allow such to take place would be tantamount to the court’s commenting on the evidence by indicating his agreement that Debbie Haynes made the particular statement. The court noted that the witness had already made an identification of Debbie Haynes as being the caller and that nothing more was necessary.
The next witness called by the defendant was Dena Dianne Kelly, defendant’s cousin. She testified that she was babysitting for the Troquilles and that she received a phone call from someone who identified herself as “Debbie”. “Debbie” simply asked whether Steve was there and left a message to “tell Steve that Debbie called.” *693 Defense counsel once again sought to have Deputy Haynes brought into the courtroom to speak in front of the witness for purposes of voice identification. The trial court again denied defense counsel’s request.
Anita Troquille testified that she saw her husband and Debbie at the Sarepta grocery store on the date of the offense. She testified that the caller with the “soft, sexy voice” who identified herself as Debbie was the same Debbie Haynes who had testified in court. Anita Troquille was adamant in her identification of Haynes as the caller.
Further, the defendant testified that Debbie Haynes was the same person who called him on the phone on two occasions.
In State v. Green, 448 So.2d 782 (La.App. 2d Cir.1984), the defendant argued that the trial court erred when it allowed an officer to identify in court his voice as it appeared on tape recordings. The officer had no prior knowledge of the defendant or the sound of his voice. The officer monitored the receiving device of the surveillance and identified the defendant’s voice on tape based on his knowledge of the defendant’s voice gained from post-arrest conversations with the defendant. This court stated the following:
Voice identification is a problem of authentication rather than a problem of a lay witness’s competency to identify a voice. See State v. Hennigan, 404 So.2d 222 (La.1981). Sufficient authentication can be established by circumstantial evidence pointing to the unseen speaker’s identity or by testimony of a witness familiar with the speaker’s voice. Authentication based on familiarity with the speaker’s voice can be gained subsequent to the communication. McCormick on Evidence, § 226, (2d Ed.1972).
In addition to the concerns expressed by the trial court in support of its denial of the defendant’s request, the trial court likely felt that such an identification was unreliable. The telephone contacts between the caller and the defense witnesses were extremely brief and had occurred more than two years earlier.
A trial court has great discretion in permitting or refusing in-court experiments and demonstrations. Criteria for withholding permission include “considerations arising from the possible disruption of orderly and expeditious proceedings or from the lack of similarity between courtroom conditions and the actual conditions sought to be re-tested.” State v. Mays, 315 So.2d 766, 768 (La.1975). See also State v. Hampton, 326 So.2d 364 (La.1976). What defendant proposed was not a simple demonstration of physical characteristics as was permitted in State v. Square, 433 So.2d 104 (La.1983) [display of teeth], and State v. Crochet, 354 So.2d 1288 (La.1977) [display of tatoo].
State v. Rault, 445 So.2d 1203 (La.1984).
It is arguable under Green, supra, that the defendant had the right to have Deputy Haynes speak before his witnesses for voice identification. However, the trial court’s ruling was not an abuse of its discretion because of the cumulative nature of the testimony. The defendant, his wife, and father-in-law each identified the caller as Debbie Haynes, the deputy who testified at trial. The witnesses stated that they had no doubt that Debbie Haynes was the caller. Further, Debbie Haynes admitted on rebuttal that she made four telephone calls to the Troquille residence. Further, she had the same first name as the caller. Based upon this record, there does not appear to be such a factual issue as contended by the defendant. Three of the defendant’s witnesses positively identified Debbie Haynes as the caller. The error of the trial court, if any, is harmless under the facts of this case.
This assignment of error is without merit.
DEFENDANT’S STATE OF MIND
In this assignment of error, the defendant contends that he was denied the opportunity to present his entrapment defense. In particular, he alleges that the trial court erred in sustaining an objection *694 to questions posed to his wife which sought to show the defendant’s state of mind after he received a phone call from a female known as “Debbie”. Defendant argues that the utterance was not offered to prove the truth of the matter asserted but simply to show his state of mind. Defendant’s entrapment defense included a showing that his family life was disrupted by harassing phone calls from an unknown female. Defendant sought to show that he acquiesced to the caller’s repeated requests “to get rid of her.”
La.R.S. 15:434 provides as follows:
Hearsay evidence is inadmissible, except as otherwise provided in this Code.
Anita Troquille, the defendant’s wife, testified upon direct examination that she received the phone calls from “Debbie.” Anita Troquille testified that the caller used a “soft, sexy” voice over the phone. Defense counsel asked the witness for the defendant’s responses when she inquired as to the nature of the phone calls. The court sustained repeated objections by the prosecutor when the witness sought to state what her husband told her. Defense counsel noted his objection to the court’s ruling, stating that the purpose of the inquiry was to show the effect the telephone calls were having on the defendant.
The prosecution’s objection on the basis of hearsay was properly sustained. La. R.S. 15:434. In State v. Bretz, 394 So.2d 245 (La.1981), the defendant sought to introduce into evidence a statement made by the defendant and another person in an effort to show the similarity of the statements and to show that the individuals had not had the opportunity to collaborate on their story. The defendant argued that the contents of the statements were not offered to show the truth therein, but rather to show the consistency between the statements. The Bretz court stated that this was an attempt to place the contents of the defendant’s statement before the jury and thus was properly excluded as hearsay under La.R.S. 15:434.
Also, in State v. Guillory, 373 So.2d 133, 135 (La.1979), defendant complained that the state introduced only his inculpatory statement into evidence and not his exculpatory statement. Finding no merit to his argument, the court explained that to do so would permit the introduction of a self-serving statement without subjecting defendant to cross-examination [cited with approval in State v. Jones, 474 So.2d 919, 929 (La.1985) ].
The defense sought to introduce into evidence a statement made by the defendant through another witness. The defendant argues that the purpose was to show his state of mind, not the truth of the matter asserted therein. However, the defense of entrapment included an attempt to portray family disruption created by the phone calls and the defendant’s reaction to those phone calls. Thus, the testimony sought was attempting to portray the truth of the matter asserted in defendant’s response, notwithstanding defense counsel’s assertions to the contrary. Furthermore, the defendant chose to testify. He could have testified in connection with the specific phone call that Anita Troquille referred to in her testimony, but he did not avail himself of that opportunity. Also, defendant testified at length of his efforts to resist “Debbie’s” requests that were destroying his home life.
This assignment lacks merit.
RELEVANT EVIDENCE
Defense counsel asked defendant if it was common practice where he lived for people to sell marijuana and could defendant have easily obtained marijuana if he had so desired. The state’s objection on the grounds the questions were immaterial was sustained.
Defense counsel asserts the trial court erred in refusing to allow defendant to show the ease with which he could have obtained a small quantity of marijuana to sell to Deputy Haynes.
Relevancy of proffered evidence depends on whether it tends to prove or disprove a material fact at issue. La.R.S. 15:435. A trial court is vested with wide discretion in *695 determining the relevancy of evidence and its ruling will not be disturbed in the absence of an abuse of discretion. State v. Watson, 449 So.2d 1321 (La.1984); State v. Kimble, 407 So.2d 693 (La.1981).
We cannot say the trial court abused its great discretion in refusing to allow testimony concerning the availability of marijuana in defendant’s community. Defendant, not the community, was on trial for distribution of marijuana.
This assignment of error lacks merit.
IMPEACHMENT OP WITNESS
During cross-examination of defendant, the prosecutor approached defendant with a copy of a 1984 lawsuit in which defendant and his wife had been sued by Doctor’s Hospital. Defense counsel objected and the jury was removed. The trial court ruled the lawsuit is a specific act and specific acts are not proper grounds for impeachment. In addition, the trial court ruled any testimony elicited concerning the lawsuit would be irrelevant.
Defense counsel contends the trial court erred in refusing to grant a mistrial when the district attorney approached defendant during cross-examination holding the civil suit papers.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in the courtroom makes it impossible for the defendant to obtain a fair trial. La.C.Cr.P. Article 775.
Defense counsel’s objection was sustained and the trial judge did not allow defendant to be questioned concerning the civil suit. No prejudice has been demonstrated.
This assignment of error lacks merit.
EXCESSIVE SENTENCE
Defendant contends the trial court erred in sentencing him to six years in prison for distributing less than half an ounce of marijuana for $50 on one occasion. It should be noted that defense counsel did not assign as error the alleged excessiveness of defendant’s sentence. Since the issue was briefed, however, it will be addressed on appeal.
Defendant is married and has two children. He was 30 years old at the time of sentencing and has an eleventh grade education.
Defendant has no juvenile record. His adult record includes misdemeanor offenses for twice carrying a concealed weapon, battery, entry of forbidden premises, and theft, as well as a number of traffic offenses.
Defendant was classified as a second felony offender for a conviction for accessory after the fact to a simple burglary. There were reporting problems during the three year probationary period given defendant for this offense, but the probationary period was completed satisfactorily. Defendant was subsequently given a first offender pardon.
Due to his status as a second felony offender, defendant was not eligible for a probated or suspended sentence. The trial court found there was an undue risk that during a period of suspended sentence or probation defendant would commit another crime; defendant was in need of some correctional treatment or custodial environment that could be provided most effectively by commitment to an institution; and any lesser sentence would deprecate the seriousness of the crime.
In addition, the trial court found defendant’s conduct did not cause or threaten serious harm to any person nor did he contemplate that it would do so. Defendant did not act under strong provocation and there were no grounds tending to excuse or justify his conduct or establish a defense to it. The victim did not induce or facilitate the commission of the crime. Defendant’s conduct was a result of circumstances likely to recur. Defendant’s character and attitude indicate he would be likely to commit another crime, even though it appears his family situation has somewhat stabilized.
*696 Defendant could have been sentenced to a term of imprisonment at hard labor for ten years and fined $15,000. La.R.S. 40:966(B)(2). In addition, a habitual offender bill was withdrawn by the assistant district attorney. Considering the defendant’s prior criminal history and the benefit he received when the habitual offender bill was withdrawn, together with the other cited factors, we cannot say the trial judge imposed an excessive sentence.

Decree

For the foregoing reasons, defendant’s conviction and sentence are affirmed.