532 So.2d 234 (1988)
STATE of Louisiana, Appellee,
v.
Don PRUDHOMME, Appellant.
No. CR 88-59.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
*236 John Brown, Public Defender Office, Lake Charles, for appellant.
Richard Ieyoub, Dist. Atty., Lake Charles, for appellee.
Before GUIDRY, FORET and STOKER, JJ.
FORET, Judge.
Defendant, Don Prudhomme, was found guilty of distribution of cocaine, a violation of La.R.S. 40:967(A) and was sentenced to serve ten years at hard labor. Defendant appeals, raising five assignments of error.[1]
At about 4:00 P.M. on August 5, 1986, a confidential informant called the Calcasieu Parish Sheriff's Office and informed them that he had arranged a narcotics buy. Officer Randy Johnson, working undercover, went to the designated location at Highway 90 and Highway 171, and picked up the defendant. After discussing the terms of a cocaine purchase to be made by Officer Johnson, the defendant and Officer Johnson drove to Opelousas and Enterprise Streets where defendant, Prudhomme, got out of the car and had a conversation with co-defendant, Brett James. James and Prudhomme reentered the car and instructed Officer Johnson to proceed down Enterprise Street and stop under the overpass. He did so and, upon arriving at that location, James took the "buy money" from Officer Johnson, left his "rigs" and his pistol for collateral, and exited the vehicle with Prudhomme to purchase drugs. Both defendants returned shortly, and James had three packages wrapped in cellophane containing a white powdery substance later determined to be cocaine. The defendants instructed Johnson to drive to a location in front of the Rolls Royce Glass House Bar, where they then injected the contents of the smallest of the three packages into their arms. Officer Johnson positively identified Don Prudhomme as the man who organized and participated in the drug purchase. Deputies Robert Stolsteimer and Wayne McGuire conducted surveillance on this transaction and corroborated portions of Officer Johnson's testimony. Defendant, himself, testified that he arranged the transaction but denies any direct involvement therein.
ASSIGNMENT OF ERROR NO. 1SUFFICIENCY OF THE EVIDENCE
Defendant argues that the jury erred in finding him guilty of distributing cocaine because the State failed to prove defendant's identity as the perpetrator of the crime. Defendant argues that the officer conducting surveillance never positively identified the defendant, Don Prudhomme, as the person involved in the charged drug transaction. Defendant also argues that the "oral confession" given by him to Deputy Donald Delouche, and taken down by Delouche on the bottom of a standard waiver of rights form, is not reliable.
Under the Jackson v. Virginia rule, the question on review is whether any rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found that the essential elements of the charged crime were proven beyond a reasonable doubt. The central question *237 here concerns the identification of the defendant as the perpetrator of the crime. There appears to be no reason to address defendant's challenge to the testimony of the surveillance officers or defendant's "oral confession" because other evidence presented overwhelmingly supports the conclusion that the defendant was the person who perpetrated the crime. To begin with, the undercover police officer, Randy Johnson, positively identified the defendant, Don Prudhomme, as the person involved in this drug transaction. Officer Johnson testified that Prudhomme got into Johnson's vehicle and took him to meet the co-defendant in an attempt to purchase drugs. Officer Johnson testified that Prudhomme and the co-defendant exited Johnson's vehicle and returned a short time later with three packages of suspected drugs. Thereafter, the defendants instructed him to drive to another location, the Rolls Royce Glass House Bar, where the defendants mixed some of the suspected drugs with water and injected the drugs into their arms.
Additionally, defendant, Prudhomme, admitted at trial that he took the confidential informant (who he knew as Billy Bob) and Officer Johnson (who he knew as Davey James) to a person known to him as "Baby James" to see if they could purchase drugs. Defendant stated that he did not get the drugs for Officer Johnson but simply was walking around while "Baby James" got the drugs, but he admits to having used some of the cocaine upon returning to Officer Johnson's vehicle.
Considering the above and foregoing, we find that there is more than adequate evidence from which a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could conclude that the defendant was the person who committed the charged offense, beyond a reasonable doubt, and we therefore find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NO. 2: FAILURE OF THE TRIAL COURT TO GRANT MOTION FOR A MISTRIAL.
By this assignment of error, defendant argues that the trial judge erred in denying his request for a mistrial. In response to a question posed by counsel for the co-defendant, Brett James, Officer Wayne McGuire made reference to a photograph (of co-defendant James) that was obtained from "a past criminal history" of James. Prudhomme moved for a mistrial, claiming that Officer McGuire's remark cast him in an unfavorable light as a person associated with criminals. The trial judge denied the motion for mistrial but admonished the jury to disregard any inference that James had committed any other crimes.
We are compelled to note that the photographic identification, where Baby James and Brett James were identified through mug shots as being the same person, was first presented to the jury through the testimony of Deputy Randy Johnson. Deputy Johnson stated that he identified the man who was introduced to him as Baby James, as being Brett James, through mug shots:
"Q. Before they arrested Brett James no one contacted you to discuss proper identification?
A. Yes, sir. I had seen mug shots before that time.
Q. I'm sorry. So you reviewed mug shots to make a determination of who Baby James was? ...
A. No, sir. I was shown a couple of mug shots and said is Brett James one of these and I said yes, that's him and I showed them which one of those mug shots it was." (Transcript, page 132)
No one objected to this being other crimes evidence at that time. Since defense counsel failed to raise a timely contemporaneous objection, he waived the right to contest this issue on appeal. La.C. Cr.P. art. 841. However, even had this issue not been waived, defendant could not prevail. In his brief, defendant now agrees that this fact situation is controlled by La. C.Cr.P. art. 771 because a police officer is not a "court official." Art. 771 is as follows:
"In the following cases, upon the request of the defendant or the state, the *238 court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
The facts of the instant case closely resemble State v. Prudholm, 446 So.2d 729 (La. 1984), in which case a police officer alluded to other charges against the co-defendant, Gladney, in an unresponsive answer to a question posed by defense counsel. Defendant, Prudholm, moved for mistrial, maintaining that the reference to other charges against Gladney cast him (Prudholm) in an unfavorable light. The trial court denied the request for mistrial and admonished the jury to disregard the testimony. The Supreme Court affirmed the decision of the trial court, finding that the admonition was sufficient to assure the defendant a fair trial.
We agree with the trial court that the admonition given to the jury in this case was sufficient to assure the defendant a fair trial, and we therefore find no merit to this assignment of error.
ASSIGNMENT OF ERROR NO. 3: FAILURE OF THE TRIAL COURT TO GRANT DEFENDANT'S MOTION FOR A NEW TRIAL AND POST VERDICT JUDGMENT OF ACQUITTAL.
Defendant argues that the trial judge erred in denying his motion for a new trial pursuant to Art. 851 of the Code of Criminal Procedure, based on the fact that the trial court abused its discretion in denying his motion for a separate trial. Article 851 states as follows:
"Art. 851. Grounds for new trial
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
We are unable to tell whether defendant was asking for a new trial under La.C.Cr.P. art. 851(2) or art. 851(5). Accordingly, we will address this issue under both of these subsections. Defendant contends that the ends of justice require that he receive a new trial because he was required to testify to clear a co-defendant, thereby incriminating himself. Thus, defendant contends that the trial court's denial of his motion for new trial had a chilling effect on his Fifth Amendment right to be free from *239 self-incrimination. Denial of defendant's motion for a new trial to serve the ends of justice, under La.C.Cr.P. art. 851(5) is not subject to review on appeal. State v. Spears, 504 So.2d 974 (La.App. 1 Cir.1987), writ denied, 507 So.2d 225 (La.1987). Defendant's new trial argument in brief also suggests that defendant should be granted a new trial under art. 851(2) because the court's ruling on a written motion (an earlier motion to sever) shows prejudicial error. Under La.C.Cr.P. art. 704, the burden of proving that a motion for severance is warranted falls on the defendant. State v. Williams, 416 So.2d 914 (La.1982). The decision whether to sever the trials of co-defendants lies within the sound discretion of the trial court, and is reviewable on appeal only when there is an abuse of discretion. Severance is necessary when the defenses presented by the co-defendants are antagonistic, i.e., a co-defendant attempts to place the blame on the other, causing each defendant to defend against the co-defendant as well as the State. State v. Prudholm, supra. Additionally, separate trials should be ordered where it is shown that a co-defendant will testify on behalf of the defendant if a severance is granted. State v. Prudholm, supra. Neither situation exists in the instant case. However, defendant maintains that a severance should have been granted in this case because he took the stand in order to exculpate his co-defendant and, in doing so, he implicated himself in the drug transaction. Even assuming this to be the case, this is clearly not grounds for a severance and, therefore, defendant is not entitled to a new trial. Furthermore, it is clear from the record that defendant took a calculated risk in taking the stand. Clearly, one of the reasons he did so was to adduce evidence in support of his defense of entrapment, as well as deny any direct involvement in the drug transaction in question. The fact that he may have prejudiced his case by taking the stand does not entitle him to a new trial based upon the trial court's failure to grant his motion to sever. Furthermore, even if a severance should have been granted, the evidence in support of the guilty verdict, aside from the defendant's alleged damaging testimony, amply supports the verdict and therefore we must uphold this verdict on appeal. State v. Montana, 489 So.2d 348 (La.App. 4 Cir. 1986), writ denied, 493 So.2d 1205 (La. 1986).
Undercover police officer Randy Johnson testified that Prudhomme introduced him to Brett James and that Prudhomme and James took his "buy money" and returned with drugs. As noted earlier, Officer Johnson positively identified Don Prudhomme as one of the men involved in this drug deal. This identification was corroborated by Officer Robert Stolsteimer, one of the officers who conducted surveillance of this transaction. Stolsteimer identified Don Prudhomme as the man who left the Wizard Store with Undercover Officer Johnson. Additionally, Stolsteimer's testimony corroborated Officer Johnson's account of the trek Prudhomme and Johnson took to purchase the drugs.
Finally, in reference to his argument for a new trial, Prudhomme also argues that his Sixth Amendment rights were adversely affected because his defense counsel's effectiveness was diminished by the denial of the motion to sever. Prudhomme does not elaborate as to how his counsel's effectiveness was diminished nor do we find anything in the record to support this contention. Accordingly, we find this argument to be without merit.
ENTRAPMENT ISSUE
Defendant also argues that the trial court erred in denying his post-verdict judgment of acquittal based on the fact that the court failed to give an instruction on entrapment. An entrapment is perpetrated when a law enforcement officer, or a person acting in cooperation with such an official for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not otherwise disposed to do so. State v. Batiste, 363 So.2d 639 (La.1978). When entrapment is at issue, the court must consider the predisposition of the defendant to commit *240 the crime at issue as well as the conduct of the police officers involved. State v. Batiste, supra. An entrapment defense will not lie if the officers or agents merely furnished a defendant who is predisposed to commit the crime the opportunity to do so. State v. Moody, 393 So.2d 1212 (La. 1981).
In State v. Cook, 460 So.2d 1075 (La.App. 2 Cir.1984), writs denied, 466 So.2d 465, 466 (La.1985), reconsideration denied, 467 So.2d 1125 (La.1985), the court held that a defendant bears the burden of production of evidence in support of his defense of entrapment and, having done so, he has the burden of persuading the trier of fact of the existence of facts constituting the defense by a preponderance of the evidence. On appeal, the relevant inquiry is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was entrapped. We conclude that the trier of fact could have found that the defense of entrapment was not proven. See, State v. Cook, supra. The only evidence of entrapment was provided by the testimony of the defendant, who testified that the confidential informant, who he knew as Billy Bob, approached him several times about purchasing drugs. Defendant testified that he had refused but that on August 5, 1986, he agreed to assist the informant in obtaining drugs. Defendant contends that this shows that he was not predisposed to commit the charged offense. However, defendant testified that he does use drugs and he states that he was on drugs when approached by the informant on the date of the offense. Also, after Officer Johnson had purchased the drugs, the defendant took his portion, or commission, and injected it into his arm. While the defendant may have been cautious about dealing with Billy Bob, we fail to see how he was not predisposed to commit this offense. His long history as a drug user, and the fact that defendant made a drug commission on the sale, lends support to the conclusion that this is a crime that the defendant was predisposed to commit.
For the reasons discussed above, the conviction and sentence of defendant are affirmed.
AFFIRMED.
NOTES
[1] In his appellate brief, defendant abandons two of his five assignments of error.