WALTER J. ROTHSCHILD, Judge.
 

 |2Pefendant, Joseph A. Williams, was charged by bill of information with one count of Computer-Aided Solicitation of a Minor, a violation of LSA-R.S. 14:81.3. Defendant pled not guilty. On August 26, 2010, defendant waived his right to a trial by jury and proceeded to a judge trial on that same date. At the close of trial, defendant was found to be guilty as charged. On September 3, 2010, defendant was sentenced to two years at hard labor without benefit of parole, probation, or suspension of sentence. The court additionally informed defendant about sex offender registration requirements, pursuant to LSA-R.S. 15:543, and ordered that defendant comply with these requirements. Defendant appeals.
 

 FACTS
 

 Sergeant Robert McGraw testified that he is employed by the Kenner Police Department in the Criminal Investigations Division, where part of his duties include conducting online sting operations where he poses as a minor female. One |sof Sergeant McGraw’s online identities is “ashton_thibodeauxl4”. Sergeant McGraw explained the online operations are conducted by posing as minor or juvenile females, entering a chat room, in this case a Louisiana chat room, and waiting to be contacted.
 

 At trial, the State presented a copy of the chat logs between “indianjoe-195751” and “ashton_thibodeauxl4”. At 5:17 p.m. on February 12, 2009, “indianjoe-195751”
 
 *629
 
 initiated contact with “Ashton”
 
 [1]
 
 via an instant message, “indianjoe-195751” asked Ashton about her age, sex and location, to which the response was that she was a fourteen-year-old female in Kenner, “indi-anjoe-195751” then identified himself as a 51-year-old male. Following this initial chat, “indianjoe-195751” left Ashton an offline message that said “hello” on March 12, 2009.
 

 On April 17, 2009, Ashton was contacted by someone using the Yahoo I.D. of “far-merboy_1957”.
 
 [2]
 
 On April 21, 2009, Ashton was again contacted by “indianjoe-195751”. During the chat, “indianjoe-195751” revealed that he was also “farmer-boy_1957”. “indianjoe-195751” asked Ashton about her breast size and if he could “work on” her breasts. Sergeant McGraw posted that “indianjoe-195751” could meet Ashton. On May 1, 2009, “indi-anjoe-195751” contacted Ashton at 4:52 p.m.
 
 [3]
 
 On May 8, 2009, “farmerboy_1957” contacted Ashton again at 2:09 p.m. On May 18, 2009, “farmerboy_1957” contacted Ashton at 5:38 p.m.
 
 [4]
 

 Sergeant McGraw recounted that on May 27, 2009, “indianjoe-195751” again contacted Ashton. He asked Ashton where her mother was, and whether she |4was working on the following day. “indi-anjoe-195751” then told Ashton that he had to go to New Orleans in the morning. An arrangement was made to meet at the McDonald’s on Veterans Boulevard in Kenner. He asked Ashton not to wear a bra or panties to the meeting. He asked Ashton to bring a girlfriend with her, and asked if Ashton “will get kinky.” He also asked Ashton if she would perform oral sex on him, and whether she prefers vaginal or anal intercourse. “indianjoe-195751” stated that he “will pop” Ashton’s “cherry.”
 

 On May 28, 2009, at 7:20 a.m., Ashton sent “indianjoe-195751” four offline messages indicating the she was just waking up and could not wait to see him. Later that morning, Sergeant McGraw went to the pre-arranged location in Kenner and waited until 9:00 a.m., but defendant did not arrive. At 9:29 a.m., Sergeant McGraw sent “farmerboy_1957” a text message from Ashton that said “I’M SO MAD AT U” indicating that Ashton was disappointed that he did not show up for their meeting. “farmerboy_1957” responded in a message that he was down past the Sonic fast food restaurant, which was close to the McDonald’s. Sergeant McGraw relocated his team and saw a blue tractor trailer stopped in the bus turning lane in front of the Xerox Centre.
 
 [5]
 
 Sergeant McGraw and other officers ap
 
 *630
 
 proached the track, and defendant was inside. At that time, defendant was asked to step out of the track and he was read his
 
 Miranda
 

 [6]
 

 rights.
 

 Defendant was told that he was under arrest for Computer-Aided Solicitation, at which time defendant responded that he was there to meet someone. Sergeant McGraw saw a laptop in defendant’s truck. Pictures of the truck introduced at trial showed a tractor-trailer with two front passenger seats and a sleeper cab in the back that contained a mattress.
 

 [sAfter being advised of his rights, defendant indicated that he understood them and he agreed to speak to Sergeant McGraw. According to Sergeant McGraw, defendant admitted that he used the online IDs of “indianjoe” and “farmerboy.” He also admitted that he was using the computer in his truck to access the internet and chat under those IDs, but he denied that he would have had sex with Ashton. On cross-examination, Sergeant McGraw affirmed that on the date defendant was arrested, there was nothing in the chat log which showed that defendant had intent to engage in sexual conduct. However, defendant had indicated this intent in prior chats.
 

 Officer Edward Rohde testified that he does computer forensic work for the Ken-ner Police Department. He detailed the procedures he generally uses to conduct a forensic review of a computer. Officer Rohde testified that he did not find any images of “ashton_thibodeaux,” child pornography, or “any other contraband” on defendant’s computer. Officer Rohde found a Yahoo profile in defendant’s computer for “indianjoe-195751”, which contained an “ashton_thibodeauxl4” folder. Inside that folder, Officer Rohde found chat archive files, or “chat logs.”
 

 Lieutenant Richard Broussard of the Calcasieu Parish Sheriffs Office testified that part of his duties included engaging in online stings while posing as a minor child. In this case, he used the undercover identity “misty_breaux2001” on a Yahoo account. Lieutenant Broussard explained that “Misty Breaux” was a fictitious 14-year-old girl from the Lake Charles area. Once the account was set up, Lieutenant Broussard used the profile to enter into a Louisiana chat room and “sit dormant,” while waiting for another chat room user to make contact.
 

 On May 27, 2009, an individual with the Yahoo user I.D. “indianjoe-195751” initiated a chat with the “Misty Breaux” profile. A transcript of the chat Llog which took place between “indianjoe-195751” and “Misty Breaux” was entered into evidence. “indianjoe-195751” asked “Misty” what her age, sex, and location were. The response was that “Misty” was a 15-year-old female from the Moss Bluff area, “indian-joe-195751” identified himself as a 51-year-old male from Houma. During the chat, “indianjoe-195751” indicated to “Misty” that he wanted to meet her.
 

 Lieutenant Broussard testified that on May 28, 2009, he was contacted by the Kenner Police Department, at which time he sent them a copy of the chat log between “indianjoe-195751” and “Misty.” On cross examination, Lieutenant Brous-sard admitted that nothing in the chat log of May 27, 2009, indicated that “indianjoe-195751” wanted to engage in sexual activity with “Misty”.
 

 LAW AND DISCUSSION
 

 On appeal, defendant asserts that the evidence was insufficient to support the conviction. Specifically, defendant contends that the State failed to prove that he had the specific intent to solicit sex from a
 
 *631
 
 minor. Defendant also contends that the trial court erred in failing to find that he had proved a defense of entrapment.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 State v. Cummings,
 
 95-1377 (La.2/28/96), 668 So.2d 1132, 1134. Where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, “assuming every fact to be proved that the evidence tends to prove.” LSA-R.S. 15:438;
 
 State v. Draughn,
 
 05-1825, p. 7 (La.1/17/07), 950 So.2d 583, 592,
 
 cert. denied,
 
 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). This statutory test works with the
 
 Jackson
 
 constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury.
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
 

 Circumstantial evidence involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or inference by which a conclusion is drawn.
 
 State v. Chism,
 
 436 So.2d 464, 469 (La.1983). The trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised, and the weight and effect to be given to each permissible inference.
 
 Id.
 

 The law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt.
 
 State v. Spears,
 
 05-0964, p. 3 (La.4/4/06), 929 So.2d 1219, 1222;
 
 State v. Mussall,
 
 523 So.2d 1305, 1309 (La.1988). Rather, the fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to guarantee the fundamental protections of due process of law.
 
 Spears,
 
 05-0964 at 3, 929 So.2d at 1222-23.
 

 Defendant was convicted of violating LSA-R.S. 14:81.3, which provides in relevant part:
 

 A. (1) Computer-aided solicitation of a minor is committed when a person seventeen years of age or older knowingly contacts or communicates, through the use of electronic textual communication, with a person who has not yet attained the age of seventeen where there is an age difference of greater than two years, or a person reasonably believed to have not yet attained the age of seventeen and reasonably believed to be at least two years younger, for the purpose of or with the intent to persuade, induce, entice, or 1 scoerce the person to engage or participate in sexual conduct or a crime of violence as defined in R.S. 14:2(B), or with the intent to engage or participate in sexual conduct in the presence of the person who has not yet attained the age of seventeen, or person reasonably believed to have not yet attained the age of seventeen.
 

 [[Image here]]
 

 D. For purposes of this Section, the following words have the following meanings:
 

 (1) “Electronic textual communication” means a textual communication made through the use of a computer on-line service, Internet service, or
 
 *632
 
 any other means of electronic communication, including but not limited to a local bulletin board service, Internet chat room, electronic mail, or on-line messaging service.
 

 (2) “Sexual conduct” means actual or simulated sexual intercourse, deviant sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, lewd exhibition of the genitals, or any lewd or lascivious act.
 

 As discussed by the Third Circuit in
 
 State v. Suite,
 
 09-150, p. 4 (La.App. 3 Cir. 10/7/09), 19 So.3d 640, 643:
 

 The computer aided solicitation of a minor statute contemplates two scenarios in which a person can be in violation thereof. The first such scenario addresses the perpetrator’s conduct that intends to persuade, induce, entice, or coerce the person to engage or participate in sexual conduct ... The second scenario envisions the perpetrator’s communication with the intent to engage or participate in sexual conduct in the presence of the young victim. In both cases, it is the communication and intent, not the end-resulting contact, that the statute is addressing.
 

 In the present case, at the conclusion of trial, the judge made the following findings of fact:
 

 THE COURT:
 

 Okay. First of all, let me say that there is an abundance of language which would come within the sexual conduct provision of the statute. Just, it’s — just on 5/27 alone ... One of which it’s just interesting, because it’s actually mentioned in State versus Suire about the taking of virginity coming within the sexual conduct. That alone in, “Will pop your cherry. Promise to be nice. Okay I will. But if I pop it, then what?” which is certainly a sexual conduct— comes within sexual conduct.
 

 Viewing the evidence in the light most favorable to the prosecution, the trial court could have found that the essential elements of LSA-R.S. 14:81.3 were |9proven beyond a reasonable doubt. The record indicates that defendant was born in 1957, which clearly makes him older than the 17-year-old age threshold indicated in the statute. The chat logs introduced by the State into evidence show defendant knowingly communicated through the use of electronic textual means with a person whom he reasonably believed to have not yet attained the age of seventeen. In fact, defendant admitted in his interview with Sergeant McGraw that he knew these communications with a 14-year-old girl were wrong.
 

 Through the use of computer forensics and transcripts of the chat logs, and by defendant’s own admission, the Kenner Police Department was able to verify that defendant used two online screen aliases, “indianjoe-195751” and “farmerboy_1957”, to communicate with Ashton using his laptop. The chat logs show that defendant clearly intended to “persuade, induce, entice, or coerce” Ashton to engage in sexual activities with him, including sexual intercourse.
 

 Defendant argues that the district court erred in failing to find that he was entrapped by the Kenner Police. Specifically, defendant asserts that he did not show up at the pre-arranged meeting with Ashton, and that he did not agree to a meeting until after police had contacted him via text. He concludes that the State failed to show that he had the specific intent to solicit sex from a minor.
 

 On appeal, contentions of entrapment are reviewed according to the constitutional standard for testing the sufficiency of the evidence as set out in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61
 
 *633
 
 L.Ed.2d 560 (1979).
 
 State v. Petta,
 
 98-745, p. 7 (La.App. 5 Cir. 2/10/99), 729 So.2d 29, 32,
 
 writ denied,
 
 99-0692 (La.9/3/99), 747 So.2d 533,
 
 cert. denied,
 
 528 U.S. 1125, 120 S.Ct. 956, 145 L.Ed.2d 830 (2000). Entrapment is a defense that arises when a law enforcement official, or a person acting in cooperation with such an official for the purpose of obtaining evidence of a crime, originates the idea of the crime, and then induces |inthe person to engage in conduct constituting the offense when that person is not otherwise disposed to do so.
 
 State v. Brand,
 
 520 So.2d 114, 117 (La.1988). However, it is not entrapment if the officers or agents have merely furnished a defendant who is predisposed to commit the crime the opportunity to do so. As stated by the Louisiana Supreme Court, “[i]n entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.”
 
 Id.
 

 The first inquiry is whether the defendant proved by a preponderance of the evidence that he was induced by an agent of the government to commit the crime. If so, the next inquiry is whether the State adduced evidence of the defendant’s predisposition to commit the crime such that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that it was the defendant’s predisposition to commit the crime, rather than the State’s inducement that caused the defendant’s conduct.
 
 State v. Falcon,
 
 06-798, p. 9 (La.App. 5 Cir. 3/13/07), 956 So.2d 650, 656.
 

 In this case, the trial judge found the following with respect to defendant’s entrapment defense:
 

 THE COURT:
 

 Now, Entrapment. The defendant instituted the contact. It was not instituted by the State. Defendant instituted all the sexual talk. I think the question that Mr. Williams has raised is the intent, whether there was the intent to follow-through on it.
 

 Well, we had a proceeding — I mean, a discussion to set up a time, a place, away from the family home, away from the possible mother. Set it up. He [defendant] actually went there, within a block-and-a-half of where it was. And then, when contacted, which I don’t believe the contact on the 28th was any kind of further inducement or entrapment by the State at all. There was a predisposition shown for the Defendant to participate, at least, in discussion of all these things, and he follows it up further by going to the area. I mean, his self-serving statement that “I wouldn’t have followed-through with it; if I would have seen her, I would have walked away. I would have — I would have left. If she would have walked up to the truck, I would | nhave left”. Which is, I think, in his statement. He’s a block-and-a-half away] and then, he could go. But when contacted, he says: “Walk down and meet me.”
 

 I think the — that convinces me beyond a reasonable doubt that Mr. Williams is, in fact, guilty under the statute of Computer-Aided Solicitation of a Minor. I think that State has carried their burden.
 

 Based on the testimony and evidence presented, we agree with the trial court that defendant did not prove by a preponderance of the evidence that he was induced by police to commit the crime of Computer-Aided Solicitation of a Minor. The testimony of Sergeant McGraw established that once the Ashton profile was posted online, McGraw waited to be contacted. It was defendant who first initi
 
 *634
 
 ated contact with Ashton on February 12, 2009. The transcripts of the chat logs of May 1, 2009, and May 27, 2009, show that defendant wanted to meet Ashton.
 
 [7]
 
 On the morning of his arrest, while he did not show up for the meeting he had initially arranged with Ashton, upon further contact he told Ashton to meet him a few blocks from where the initial meeting was supposed to take place only one-half hour later than the original meeting was scheduled. As noted by the Court in
 
 .Suire, supra,
 
 “it is the communication and intent, not the end-resulting contact, that the statute is addressing.” [Emphasis added]. Accordingly, because defendant did not show that he was induced by police to commit the crime at issue, defendant did not prove his defense of entrapment.
 

 Because the record shows that the evidence was sufficient to support defendant’s conviction, this assignment of error is without merit.
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). No errors requiring corrective action were noted.
 

 h
 
 ¿DECREE
 

 For the foregoing reasons, we affirm defendant’s conviction and sentence.
 

 AFFIRMED
 

 [1]
 

 . "Ashton” will refer to the online profile set up by Sergeant Robert McGraw.
 

 [2]
 

 . The chat transcript of April 17, 2009 between "farmerboy_1957” and Ashton shows that "farmerboy_1957” was initially informed that Ashton was 14. After learning Ashton’s age, he asked her about her breast size, and whether she could send him pictures of herself.
 

 [3]
 

 . The transcript of the May 1, 2009 chat shows that "indianjoe-195751” asked Ashton about the size of her breasts and buttocks, and if she had pubic hair. Ashton told "indi-anjoe-195751 ” that she was still only 14 years old.
 

 [4]
 

 . The transcript of the May 18, 2009 chat shows that "farmerboy_1957” asked Ashton about her breast size, and indicated that he wanted to meet her soon. He asked Ashton whether she had ever received or performed oral sex, and then asked if Ashton would perform oral sex on him.
 

 [5]
 

 . The transcript of the May 28, 2009 chat shows that "farmerboy_1957” told Ashton that he was in front of "Rault Resources” in a blue truck. Defendant had indicated in the chat log of May 27, 2009, that he drove an 18-wheeler.
 

 [6]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [7]
 

 . On May 1, 2009, defendant wrote at 7:44 p.m. "u need to meet me soon”. On May 27, 2009, defendant wrote at 1:29 p.m. "how can I cum meet u.”