NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1144

STATE OF LOUISIANA

VERSUS

KENRARD D. BROUSSARD

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 10-1536
HONORABLE KEITH R. J. COMEAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

**CONVICTION AFFIRMED; SENTENCE
AFFIRMED AS AMENDED; AND
REMANDED WITH INSTRUCTIONS.**

**J. Phil Haney**
**District Attorney**
**Angela B. Odinet**
**Assistant District Attorney**
**415 Main Street**
**St. Martinville, Louisiana  70582**
**(337) 394-2220**
**Counsel for Appellee:**
      **State of Louisiana**

**Harry Daniels, III**
**Daniels & Washington**
**830 Main Street**
**Baton Rouge, Louisiana  70802**
**(225) 346-6280**
**Counsel for Defendant/Appellant:**
      **Kenrard D. Broussard**

**Kenrard D. Broussard**
**Richwood Correctional Center Unit 4**
**180 Pine Bayou Circle**
**Monroe, Louisiana  71202**
**In Proper Person**

**KEATY, Judge.**

Defendant, Kenrard D. Broussard, was charged by bill of information with possessing cocaine within two thousand feet of school property, violations of La.R.S. 40:967 and 40:981.3, and drug racketeering, a violation of La.R.S. 15:1351 to 1356. During the trial, the State amended the bill to one thousand feet to accurately reflect La.R.S. 40:981.3 at the time of the commission of the offense.[1] The jury found Defendant guilty of possession of two hundred grams to four hundred grams of cocaine within one thousand feet of school or school property. He was acquitted of the racketeering charge.

On January 31, 2012, Defendant was sentenced to eighteen years at hard labor, without the benefit of probation and parole. Additionally, a $350,000.00 fine was imposed. Defendant now appeals.

COUNSEL-FILED ASSIGNMENTS OF ERROR:

1. Broussard was entrapped as a matter of law when he was induced by an Agent of the State to commit a crime.

2. The Court sentenced Broussard to an Illegal and Impermissible sentence by sentencing him to 18 years at hard labor without benefit of probation, parole or suspension of sentence.

3. The sentence imposed is excessive for this offense and this offender.

PRO SE ASSIGNMENTS OF ERROR:

1. The state failed to introduce evidence sufficient for the jury to find beyond a reasonable doubt that Broussard was predisposed to commit the crime.

2. The trial court's instructions on the defense of entrapment were plainly erroneous because of its failure to inform the jury that the state

---

[1] Louisiana Revised Statutes 40:981.3 was amended by 2010 La. Acts No. 506, § 2, effective August 15, 2010, to change the definition of a "drug free zone" from "[a]n area within one thousand feet of any property used for school purposes" to "[a]n area within two thousand feet of any property used for school purposes."

has the burden of proving beyond a reasonable doubt that Broussard was predisposed or not entrapped.

3. Broussard's eighteen year sentence is excessive for a first time offender.

## DISCUSSION

### *Facts*

The Iberia Parish Sheriff's Office found a large quantity of cocaine and marijuana at Charles Ransonet's home. Ransonet claimed the cocaine belonged to Defendant. The police arranged, through Ransonet, for Defendant to pick up the cocaine from Ransonet's shed located behind Ransonet's property. Defendant went to the shed and obtained the cocaine. The police arrested Defendant when he exited the shed. The property was located within a thousand feet of a school.

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, there is one error patent raised and addressed in Assignment of Error Number Two and a second error patent discussed below.

Defendant was informed at sentencing that he has two years within which to file an application for post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8 provides that a defendant has two years after the conviction and sentence become final to seek post-conviction relief. In *State v. Celestine*, 11-1403 (La.App. 3 Cir. 5/30/12), 91 So.3d 573, and *State v. Grace*, 10-1222 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, *writ denied*, 11-961 (La. 10/21/11), 73 So.3d 382, this court found a similar advisement insufficient and directed the trial court to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition

2

of the opinion and to file written proof in the record that the defendant received the notice.

Based on the prior jurisprudence of this court, we direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of the opinion and to file written proof in the record that Defendant received the notice.

## *Assignment of Error Number One and Pro Se Assignment of Error Number One*

Defendant asserted he was entrapped by Ransonet, who was acting on behalf of the Iberia Parish Sheriff's Department. He argues that the State failed to present sufficient evidence that he was predisposed beyond a reasonable doubt to commit the crime.

In his attorney-filed appellant brief, Defendant contends (citations omitted):

> In this case Charlie Ransonet was detained after a narcotics investigation was conducted at his home. During a search of Ransonet's home Agents located a large amount of cocaine, marijuana, and drug processing material. After the agents located the drugs Ransonet requested that he be allowed to contact his friend Sheriff Louis Ackal. The agents called Sheriff Ackal for Ransonet. After speaking with the Sheriff, Ransonet then told the agents that the drugs belong to Kenrard Broussard.

> At that point Ransonet was not arrested for any of the drugs and was told to contact Broussard to come get the drugs. Ransonet tried for four days over numerous calls to get Broussard to come get the drugs. Finally after four days of pleading with Broussard to come get drugs, Ransonet was able to convince Broussard to come get drugs. Broussard and Ransonet had been friend[s] for over five years. They would discuss politics, they would help each other with yard work and would sometime attend sporting events. Ransonet was Broussard's mentor, and he used this position and Broussard's trust and love for him to persuade and induce someone who otherwise had no predisposition to illegal drug activity.

> After tricking Broussard to come get the drugs Ransonet then went to the narcotic's office to inform them that Broussard would be picking up drugs on that day. Only one of the phone calls between Broussard and Ransonet was made at the narcotics office.

[The] State was unable to present any evidence of predisposition by Broussard. In fact during the search of Broussard's home[,] agents did not locate any evidence that he was involved in any illegal drug activity. Agents also testified that prior to arresting Ransonet, Broussard was not part of any active investigation.

The State also attempted to show Broussard was predisposed by arguing and attempting to show that Broussard had been involved in numerous drug transactions. The State also charged Broussard with Drug Racketeering. The jury rejected the State's argument of predisposition when they found Broussard **NOT GUILTY** of Drug Racketeering.

In this case Ransonet acting on behalf of the State induced Broussard in to [sic] going [to] get the drugs out of the shed. Ransonet did this in order to save himself and to avoid prosecution.

In his pro se brief to this court, Defendant argues (citations omitted):

After Ransonet's home was searched and he was detained, he called Broussard via cell phone to come by his home to pick up narcotics. Broussard refused and the narcotics were placed into evidence. Broussard did not engage in the criminal activity for profit. Broussard was doing Ransonet a favor after numerous calls by Ransonet pleading with him to help him out. Broussard evidenced reluctance to engage in the criminal activity, but was overcome by the repeated calls and pleading from Ransonet made over four days. Narcotic agents did not bother to record any of the phone calls between Ransonet and Broussard. There's no evidence Broussard would have possessed narcotics absent the overwhelming strength of Ransonet's inducement.

The State responds that Defendant waived the defense of entrapment because he failed to raise it at trial. The State alternatively contends that, if the issue is properly before this court, Defendant failed to prove entrapment.

An affirmative defense, such as entrapment, is a legal argument which cannot be raised for the first time on appeal. *State v. Perkins*, 07-423 (La.App. 3 Cir. 10/31/07), 968 So.2d 1178, *writ denied*, 07-2408 (La. 5/9/08), 980 So.2d 688. In this case, Defendant raised the defense of entrapment during the opening

4

statement. Furthermore, the trial court gave a jury instruction on entrapment. Thus, this issue is properly before this court.

In *State v. Brand*, 520 So.2d 114, 117 (La.1988) (footnote omitted), the court explained:

> Entrapment is an affirmative defense. See Model Penal Code § 2.13(2); *State v. Cook*, 460 So.2d 1075 (La.App. 2nd Cir.1984), *cert. denied*[,] 466 So.2d 465, 466 (1985). Thus, the burden was on defendant to prove entrapment by a preponderance of the evidence. The question whether the government agent implanted the criminal idea in the mind of an innocent person to induce the commission of a crime that would not otherwise be committed is one for the jury. *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).
>
> The entrapment defense will not be recognized when the law enforcement official merely furnishes the accused with an opportunity to commit a crime to which he is predisposed. *State v. Moody*, 393 So.2d 1212 (La.1981). In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Thus, the focus in determining an entrapment defense is on the conduct and predisposition of the defendant, as well as the conduct of the government agent.

*See also State v. Caldwell*, 616 So.2d 713 (La.App. 3 Cir.), *writ granted in part and remanded on other grounds*, 620 So.2d 859 (La.1993.)

In *State v. Williams*, 11-79, p. 10 (La.App. 5 Cir. 11/29/11), 80 So.3d 626, 633, the court explained:

> The first inquiry is whether the defendant proved by a preponderance of the evidence that he was induced by an agent of the government to commit the crime. If so, the next inquiry is whether the State adduced evidence of the defendant's predisposition to commit the crime such that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that it was the defendant's predisposition to commit the crime, rather than the State's inducement that caused the defendant's conduct.

At trial, Sergeant Todd Anslum, with the Iberia Parish Sheriff's Office, testified that in May 2010, his office received complaints of illegal drug activity at

Ransonet's home. On May 20, 2010, he went to Ransonet's home and spoke to him outside of the house. The front door of the home was open. During his conversation with Ransonet, Officer Anslum smelled marijuana emitting from the home. When he asked Ransonet about the smell, Ransonet admitted that there was marijuana in a can on a coffee table in his living room. After finding the marijuana in the can, Officer Anslum arrested Ransonet and continued to search the home. In one of the bedrooms, Officer Anslum recovered a "plastic grocery bag which contained four other bags with what appeared to be cocaine inside of them"; the total amount was about 300 grams. Another 268 grams of marijuana were found in the cat's bed. In another bedroom, four grams of cocaine, some marijuana, and several items of drug paraphernalia were found. Among the items found in the home was a cutting agent used to cut the kilos of cocaine, a sifter used to break up the cocaine into a fine powder, a mirror used for cutting the cocaine, and a scale used to measure the narcotics.

Officer Anslum explained that the four bags suspected of containing cocaine found at Ransonet's home were used to investigate Defendant. After being put in the evidence locker by Officer Anslum, the four bags of cocaine in the white plastic grocery bag were removed and placed in the shed at Ransonet's home. Up until the time he went to Ransonet's home, Officer Anslum was not investigating Defendant. Moreover, although he gave the District Attorney a search warrant and an arrest warrant for Ransonet, Ransonet had not been arrested at the time of trial.

Byron LaSalle, a narcotics agent for the Iberia Parish Sheriff's Office, also testified at trial. When asked how the investigation regarding Defendant was initiated, Officer LaSalle responded that Ransonet, who was under investigation, informed him that the illegal narcotics found in his home belonged to Defendant.

On May 24, 2010, the police put the white grocery bag containing the baggies of cocaine seized from Ransonet's home in the shed at Ransonet's home. A camera system was set up in Ransonet's home to monitor the cocaine that was in the shed. Officer LaSalle and Officer Comeaux, another Sheriff's Office employee, arrived at Ransonet's home around 5:00 p.m. They watched the shed via a monitor set up in the home. The police were also conducting surveillance on the street to inform the officers in the home of Defendant's arrival. According to Officer LaSalle, Defendant entered Ransonet's shed around 6:00 p.m. Officer LaSalle testified, "He [Defendant] walked directly to the back, to the shed, walked into the shed, opened the drawer, grabbed this bag, looked at it, kind of hid it under his shirt, and then he started to exit the shed." As Defendant exited the shed, the officers arrested him. The officers seized from Defendant the cocaine, a digital scale, and some plastic bags. Defendant dropped the white grocery bag containing the cocaine as the officers approached him. Officer LaSalle testified about his conversation with Defendant following the arrest, as follows:

Q.    What did he tell you during that conversation?

A.    During that conversation he told me that the cocaine was, in fact, his; that he was a guidance counselor at Carencro Middle High School -- middle school, not high school. He had been a guidance counselor there for a couple of years and didn't want to lose his job. He told me that he had been selling cocaine for approximately four months. He told me that his supplier lives in Houston, some guy in Houston. He told me that his supplier doesn't front him the cocaine, that he has to go to him with the money to buy, you know, large amounts of cocaine at a time. I then asked him how he could afford that on being a guidance counsel. He said he makes, you know, extra money selling dope. That's about it.

Q.    Did you ask him what he was going to do with the cocaine that you arrested him with?

A.    Yes. I asked what he intended on doing once he got from Charlie's house. He was bring[ing] it to his mom's house in

Jeanerette to go hide it. I had also asked him about the scale and the baggies, and that was, you know, to weigh it and repackage it for street level sales.

On cross-examination, Officer LaSalle acknowledged that the statement by Defendant was not written by Defendant, nor was it recorded or video taped. He explained that he took notes at the time of the questioning. However, Officer LaSalle's notes were not introduced into evidence.

During his cross-examination, Officer LaSalle acknowledged that drugs were found in Ransonet's living room and in two bedrooms. More specifically, officers found marijuana, rolling paper, a metal clip, and a pill in the living room. Inside a dresser drawer in the first bedroom, officers discovered four bags of cocaine weighing approximately 311 grams. More marijuana and cocaine were found in the second bedroom, along with a mirror, razors, a scale, and a sifter, which to his knowledge is used for snorting and breaking up cocaine. Officers also found sandwich bags, which, according to Officer LaSalle, are typically used to repackage narcotics.

The following exchange occurred between Defendant's attorney and Officer LaSalle:

Q.     From your observation of Charlie's house and what was found in those three rooms, in your experience as a detective, narcotics detective, this would indicate that you were, in fact, at the home of a drug dealer, right?

A.     Yes.

Officer LaSalle acknowledged that Ransonet was the only one to implicate Defendant. In addition, Officer LaSalle admitted that it was his office that agreed to place the drugs in Ransonet's shed and that he was the person who removed the

8

drugs from the narcotics office and placed them in the shed, which was located in a school zone.

Officer LaSalle testified that Defendant consented to a search of his house. After searching the house, the officers found no evidence of drugs and no evidence that drugs were being sold from Defendant's house. Furthermore, Officer LaSalle testified that there was no investigation of Defendant prior to his arrest on May 24.

During cross-examination, Officer LaSalle was questioned about Defendant's predisposition for illegal drug activity. He responded there was nothing found at Defendant's home to suggest illegal drug activity. When asked if he found any evidence to suggest that Defendant was "enterprising and racketeering," Officer LaSalle responded that Defendant owned a Land Rover, a Mercedes Benz, and a Dodge pick-up truck.[2]

Jason Comeaux, a Sergeant in the Narcotics Division of the Iberia Parish Sheriff's Office, testified that he was with Officer LaSalle at Ransonet's home on May 24. He was inside the home with Officer LaSalle monitoring the shed, and he observed Defendant walk into the shed and get the cocaine.

Ransonet testified that beginning in 2005, and through 2010, he purchased small quantities of marijuana and cocaine from Defendant and that there were over 160 transactions between them. According to Ransonet, Defendant was his sole supplier of drugs during that time period. Ransonet admitted, however, that he sold drugs before he met Defendant and that he had never seen Defendant use drugs. Ransonet stated that he and Defendant were friends and that occasionally Defendant would bring his child to swim at Ransonet's house.

---

[2] During closing arguments, Defendant's attorney stated that Defendant's vehicles were used vehicles.

Ransonet testified that Defendant has twice asked to stash drugs at his house. The first time occurred about two weeks before the police searched his home in May 2010. Defendant had asked Ransonet to stash drugs at his house because Defendant's house was "hot." Defendant had picked up the drugs several days later but had again stashed drugs at Ransonet's house on the Monday before his house was searched on Thursday, May 20. Ransonet testified that after his home was searched and drugs were found, he requested to call Sheriff Ackal to ask what his best course of action was. The sheriff told him to cooperate with the officers.

Ransonet testified that while detained at the sheriff's office on May 20, the officers requested that he get Defendant to pick up the cocaine. Then the following pertinent exchange occurred:

Q. And, at that point, they let you leave the station?

A. No, sir.

Q. You made a phone call to Kenrard Broussard?

A. Exactly, sir.

Q. And, at that point, he told you he wasn't coming get the drugs?

A. He did not say that.

Q. On the 20th?

A. He told me he wasn't going to come get it that night.

Q. He told you he wasn't coming get the drugs?

. . . .

Q. Now, it wasn't until your constant calling him, begging and pleading him to come get the drugs, to do this one big favor, that he finally agreed to come do this one favor, a favor for his friend Charlie, and he came get the drugs?

A. That was not our conversation, sir.

. . . .

A.     Everything I did after that, after the 20th would be at the Sheriff's Department.

Q.     I understand that. You were acting on behalf of the Sheriff's Office calling Mr. Broussard, correct?

A.     And they were the ones who was [sic] in charge of me calling and being there while I was calling.

Q.     And they were in charge of you calling?

A.     Right, sir.

Q.     But I'm talking about May 24th. You went to the office and you told Agent Anslum that Kenrard Broussard was coming get the drugs. He made you call Kenrard Broussard and you finally got Kenrard Broussard to agree to come get the drugs?

A.     That's what they wanted me to do.

. . . .

Q.     If your phone records reflect numerous calls between May 20th, 2010 and May 24th, 2010, would that be lying or would that true?

A.     That would be the truth.

Ransonet informed Defendant that he would leave the drugs in the building behind his house.

Based upon the above testimony, we conclude that the State proved by a preponderance of the evidence that Defendant was predisposed to the crime. Ransonet testified that Defendant supplied him with drugs. Officer LaSalle testified that Defendant confessed to him that he sold drugs. Defendant offered no evidence to rebut the testimony. Accordingly, this claim lacks merit.

### Pro Se Assignment of Error Number Two

Defendant argues that the trial court's instructions on the defense of entrapment were plainly erroneous because of its failure to inform the jury that the

11

State had the burden of proving beyond a reasonable doubt that he was predisposed or not entrapped. Defendant contends the trial court instructed the jury that Defendant must prove entrapment by a preponderance of the evidence and the proper standard was beyond a reasonable doubt. In support of his argument, Defendant cites to only federal cases.

As noted above, the proper standard in Louisiana for proving entrapment is preponderance of the evidence, and the trial court properly instructed the jury as to that standard. *See Brand*, 520 So.2d 114, and *Caldwell*, 616 So.2d 713.

Accordingly, this assignment of error lacks merit.

### *Assignment of Error Number Two*

Defendant asserts his sentence is illegal. He contends the trial court erred in ordering his sentence be served without the benefit of probation, parole, or suspension of sentence, and his sentence should be amended to provide that only the first ten years are to be served without the benefit of probation, parole, or suspension of sentence.

Defendant was convicted of a violation of La.R.S. 40:967. The applicable penalty provision for possessing more than 200 grams of cocaine but less than 400 grams of cocaine is contained in Section F(1)(b) of La.R.S. 40:967. It provides a sentence of ten to thirty years at hard labor with a fine of $100,000.00 to $350,000.00. Additionally, the penalty for possession of the cocaine within 1,000 feet of a school zone, as set forth in La.R.S. 40:981.3, provides that violators "shall be punished by the imposition of the maximum fine and be imprisoned for not more than one and one-half times the longest term of imprisonment authorized by the applicable provisions of R.S. 40:966 through 970." Thus, in this case, the trial

court was required to impose a $350,000.00 fine and imprisonment of zero to forty-five years. Furthermore, La.R.S. 40:981.3(E)(2) provides:

> A sentence imposed for a violation of the provisions of this Section shall not be subject to parole, probation, or suspension of sentence to the extent that the minimum sentence for a violation of a felony provision of R.S. 40:966 through 970 is not subject to parole, probation, or suspension of sentence.

In this case, the minimum sentence that could be imposed under La.R.S. 40:967 was ten years at hard labor. Thus, the trial court was authorized to impose ten years of Defendant's sentence without benefit of probation, parole, or suspension of sentence. The trial court erred in ordering the entire sentence to be served without benefits. Therefore, we amend the sentence and order that only the first ten years of the sentence be served without the benefit of probation, parole, or suspension of sentence. The trial court is ordered to enter a minute entry to set forth the amendment.

## *Assignment of Error Number Three and Pro Se Assignment of Error Number Three*

Defendant asserts his eighteen-year sentence is excessive for a first offender. In his pro se brief, Defendant points out that he is married with a son, and he was employed as a school counselor for over eight years. Defendant contends that the trial court erroneously relied on facts that were proven untrue when imposing sentence. Defendant argues that the trial court stated that he had supplied drugs to Ransonet and was the leader, but the jury found him not guilty of drug racketeering.

At his sentencing hearing, Defendant testified that he was "deeply remorseful . . . for the mistakes" that he made. He stated, "I did a favor for someone I considered a friend and it is one that will affect me . . . for the rest of my

life." Defendant maintained that he had no intention of distributing the cocaine and that he got the cocaine from the shed as a favor for Ransonet.

The trial court set forth the following factors when imposing the sentence:

THE COURT:

All right. The Court has considered all of the evidence that has been presented in this particular case [and] also notes that it sat through the entire trial and considered the evidence that was presented at the trial.

Factors to be determined in this particular case were found in Article, Code of Criminal Procedure Article 894.1. And the Court finds the following factors under subparagraph B, to be applicable. No. 1) The offender's conduct during the commission of the offense manifested deliberate cruelty to the victim. The victims in this particular case are the recipients of those, of the, the dope that was distributed by Mr. Broussard. The Court is very well aware of drug addiction since this Court does Drug Court over in St. Martin Parish and it affects, drugs affect a lot of people in the community, a lot of families, and a lot of family members. It is, it is a serpent in the community of, of families that, that causes havoc amongst families. And the Court does not take lightly the fact that someone who is distributing drugs should be given lenient sentences.

The offender, No. 3) The offender offered or has been offered or has given or received anything of value for the commission of the offense. He received money. He got money for distributing drugs to Charlie Ransonet and others.

The offender knowingly created a risk of death or great bodily harm to more than one person. By distributing drugs these people die.

No. 11) The offense involved multiple victims and, and incidents for which separate sentences have not been imposed. The testimony was that, by Mr. Broussard to agent Lasalle that he had been, he had been selling dope for a number of occasions. I think it was in excess of one year.

No. 13) The offender was a leader or his violation was in concert with one or more persons with respect to whom the offender occupied a position of organizer, a supervisory position, or any other position of management. It – Charlie Ransonet testified uncontradicted that he was supplied drugs by Mr. Broussard. Therefore, he was a leader above Mr. Ransonet. And Mr. Ransonet was also a user/supplier. He sold to friends and also used some himself.

14

No. 15)  The offense was a controlled dangerous substance offense and the offender obtained substantial income or resources from ongoing drug activities.  Mr. Broussard admitted that he had ongoing drug activities and he sold.

The Court finds one mitigating factor is that the defendant has no prior history of delinquency or criminal activity, has led a law abiding life for a substantial period of time before the commission of the instant offense and before his admission that he started selling drugs approximately a year to two years prior to being arrested from, on this particular case. The Court has considered all of these factors, has considered the testimony involved and also has considered the statutes involved and finds that I cannot give him a suspended sentence according to the Legislature Statue [sic] under 40:967 and 40:981.3.  And that the defendant is in need of correctional treatment in a custodial environment which can be provided which can be provided most effectively by his commitment to an institution.  The Court finds that any lesser sentence that it gives today would depreciate the seriousness of the offender, defender's [sic] crime.

Defendant filed a motion to reconsider sentence arguing excessiveness of sentence.  The trial court denied the motion without a hearing.  The sentencing range for Defendant's conviction is up to forty-five years at hard labor.  Defendant was sentenced to eighteen years at hard labor, a mid-range sentence.

In *State v. Baker*, 06-1218, pp. 7-8 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, 89, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court explained:

This court has set forth the following standard to be used in reviewing excessive sentence claims:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981).  The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v.*

15

> *Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d
> 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067.
> The relevant question is whether the trial court abused its
> broad sentencing discretion, not whether another
> sentence might have been more appropriate. *State v.*
> *Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*,
> 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01),
779 So.2d 1035, 1042-43, *writ denied*, 01-0838 (La.2/1/02), 808
So.2d 331 (alteration in original).

> In *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d
> 57, *writ denied*, 99-0433 (La.6/25/99), 745 So.2d 1183, our colleagues
> on the Fifth Circuit Court of Appeal noted three factors the appellate
> court should consider in reviewing a judge's sentencing discretion.
> They are:
>
> > 1. the nature of the crime,
> >
> > 2. the nature and background of the offender, and
> >
> > 3. the sentence imposed for similar crimes by the same
> > court and other courts.
>
> *State v. Telsee*, 425 So.2d 1251 (La.1983); *State v. Richmond*, 97-
> 1225 (La.App. 5 Cir. 3/25/98), 708 So.2d 1272.

*Id*. at 58.

After finding over 300 grams of cocaine along with marijuana and other drug paraphernalia at Ransonet's private residence, Ransonet indicated the cocaine belong to Defendant. He stated that Defendant was his supplier, and he was keeping the cocaine for him. The police, through Ransonet, arranged for Defendant to pick up the cocaine from Ransonet's shed located in the back of Ransonet's property. The police arrested Defendant as soon as he exited the shed with the cocaine.

Defendant, a first-time offender, completed college. He was a guidance counselor at Carencro Middle School. He was married and had a son, age thirteen, at time of the sentencing hearing.

Defendant was sentenced to the mid-range sentence. There are not many reported cases dealing with first offenders having committed possession of cocaine from 200 to 400 grams.

In *State v. Pham*, 01-2199 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, the defendant, a first-time offender, was convicted of possession of more than 200 grams but less than 400 grams of cocaine. He was sentenced to twenty-five years at hard labor. On appeal, the defendant argued his sentence was excessive. The court affirmed the sentence.

In *State v. Rios*, 528 So.2d 163 (La.App. 3 Cir.), *writ denied*, 530 So.2d 83 (La.1988), the defendants were originally charged with possession of 400 or more grams of cocaine, but entered guilty pleas to the lesser crime of possession of cocaine in excess of 200 grams but less than 400 grams and were each sentenced to ten years at hard labor and a $100,000.00 fine. On appeal, neither defendant challenged the term of his sentence.

After applying the factors set forth in *Lisotta*, we conclude that the trial court did not abuse its discretion by imposing the eighteen-year sentence. Defendant, although a first offender, was sentenced to a mid-range sentence. As indicated by the two cases cited above, the eighteen-year sentence is in line with sentences imposed on similarly situated defendants. Thus, Defendant failed to prove that the eighteen-year sentence imposed by the trial court is excessive.

## DECREE

Defendant's conviction is affirmed. The trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of the opinion and to file written proof in the record that Defendant received the notice. In addition, we

17

amend Defendant's sentence and order that only the first ten years of the sentence be served without the benefit of probation, parole, or suspension of sentence. The trial court is ordered to enter a minute entry to set forth the amendment. In all other respects, Defendant's sentence is affirmed.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; AND REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.